131 N.J. Super. 159 (1974)
329 A.2d 70
HUDIK-ROSS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
1530 PALISADE AVENUE CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. H-R PLUMBING, INC., ET ALS., PLAINTIFFS-RESPONDENTS,
v.
1530 PALISADE AVENUE CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. HUDIK-ROSS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
H.R. SHAPIRO, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. H.R. SHAPIRO CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HUDIK-ROSS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT. HERBERT W. DAVIS, ET ALS., PLAINTIFFS-RESPONDENTS,
v.
AMERICANA ASSOCIATES, DEFENDANT-APPELLANT THIRD-PARTY PLAINTIFF,
v.
HUDIK-ROSS, INC., THIRD PARTY DEFENDANT-RESPONDENT. BERNARD BLATT, PLAINTIFF-RESPONDENT,
v.
AMERICANA ASSOCIATES, DEFENDANT-APPELLANT THIRD-PARTY PLAINTIFF,
v.
HUDIK-ROSS, INC., THIRD-PARTY DEFENDANT-RESPONDENT. LARRY MANUS, PLAINTIFF-RESPONDENT,
v.
AMERICANA ASSOCIATES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1974.
Decided November 6, 1974.
*161 Before Judges COLLESTER, LORA and HANDLER.
Mr. Benjamin P. Michel argued the cause for defendants-appellants H.R. Shapiro, Inc. and 1530 Palisade Avenue *162 Corp. (Messrs. Riker, Danzig, Scherer and Brown, attorneys).
Mr. Theodore W. Geiser argued the cause for plaintiffs-respondents Hudik-Ross, Inc. and H-R Plumbing, Inc. and for defendant-counterclaimant Hudik-Ross, Inc. (Messrs. McElroy, Connell, Foley and Geiser, attorneys; Mr. Mack L. Fleder on the brief).
Mr. Daniel M. Hurley submitted a statement in lieu of brief for defendant-respondent Hudik-Ross, Inc. (Messrs. Conway, Reiseman, Michals and Wahl, attorneys).
Mr. Allan Maitlin submitted a statement in lieu of brief for plaintiff-appellant H.R. Shapiro, Inc. (Messrs. Feuerstein, Sachs and Maitlin, attorneys).
Mr. Peter R. Feehan submitted a statement in lieu of brief for defendant-respondent Hudik-Ross, Inc. (Messrs. Feehan and Feehan, attorneys).
Mr. Daniel A. Fierro, Jr. submitted a statement in lieu of brief for plaintiffs-respondents Herbert W. Davis and Margaret C. Davis (Messrs. Fierro, Fierro and Mariniello, attorneys).
Mr. George A. Vaccaro submitted a statement in lieu of brief for defendant-third party plaintiff-appellant Americana Associates (Messrs. Vaccaro, Osborne and Curran, attorneys).
Mr. William Goldberg filed a statement in lieu of brief for plaintiffs-respondents Larry Manus and Bernard Blatt.
The opinion of the court was delivered by LORA, J.A.D.
This controversy arises out of contracts entered into by plaintiffs-respondents, Hudik-Ross, Inc. and its related corporation, H-R Plumbing, Inc. (both hereinafter referred to as Hudik-Ross) and defendants-appellants H.R. Shapiro, Inc. and its related corporation, 1530 Palisade *163 Avenue Corp. (both hereinafter referred to as H.R. Shapiro) for construction work to be performed by plaintiffs. On August 6, 1970 H.R. Shapiro entered into a contract with Hudik-Ross under which Hudik-Ross was to provide all the labor and materials for the plumbing work at the Colony Apartments in Fort Lee, New Jersey for $1,460,000.
On November 20, 1970 defendants and plaintiffs entered into a similar contract for the heating, ventilating and air conditioning (HVAC) at the Colony for $1,300,000. On September 8, 1971 the parties contracted for plaintiffs to provide all the plumbing and HVAC work at the site of Regency Towers in Allentown, Pennsylvania for $707,500.
Defendants allege serious disputes arose between the parties over the work on both projects because plaintiffs failed to do work properly and provided inadequate materials for which defendants delivered numerous "back-charges" to Hudik-Ross, totaling "at last count" $1,091,573. Plaintiffs assert all work was completed on two contracts by October 9, 1972 and on the third by May 15, 1973; they deny any disputes arose during performance of the work and state no arbitration was demanded while work was in progress.
H.R. Shapiro refused to make the final contract payments and on August 20, 1973 Hudik-Ross instituted three suits against defendants under the three contracts. They claimed $110,500 for the Allentown job, and on the Colony job some $183,393.40 for the HVAC work and $242,915 for the plumbing work, in all a total of $536,808.40. Defendants answered alleging they refused to pay because of the "back-charges" in dispute, and by separate affirmative defense set forth their contractual right to go to arbitration.
In October 1973 defendants filed in each of the three separate suits a notice of motion for an order to consolidate the three cases and for an order staying the cases so that the controversies could be submitted to arbitration in accordance with a provision contained in all three contracts. The motion was not granted by the trial judge at that time because a *164 separate written demand for arbitration had not yet been made upon plaintiff as called for in the arbitration clause. In December 1973 defendants served separate written demands for arbitration on plaintiffs and requested reargument on the motion. On February 6, 1974, following reargument, an order issued staying all three actions pending arbitration, but consolidating only the two actions involving construction at Fort Lee, New Jersey.
Subsequently, on February 20, 1974 a complaint was filed in the name of H.R. Shapiro, Inc. against Hudik-Ross by defendants' insurance carrier under its subrogation rights to recover for water damage that occurred on two occasions because of alleged defective work by Hudik-Ross, who then answered and counterclaimed asserting the three claims made in the original three suits.
Three other suits for damages were filed by tenants in the Fort Lee building against Americana Associates, the management corporation for the apartments, who, in turn, filed third-party complaints against Hudik-Ross alleging they had caused the damage by faulty workmanship.
Hudik-Ross then moved to consolidate all seven cases and to dissolve the order entered in the three original suits on February 6, 1974 to stay and to arbitrate.
On May 31, 1974 an order was entered dissolving the order of February 6, 1974 and consolidating all seven cases. On June 27, 1974 leave to appeal from this order was granted by this court.
The contracts between Hudik-Ross and H.R. Shapiro entered into on August 6, 1970 and November 20, 1970 contained the following clause:
Arbitration Article VIII. All questions that may arise under this contract and in the performance of the work hereunder shall be submitted to arbitration at the choice of either of the parties hereto. The demand for arbitration shall be filed in writing with the party against whom it is sought. Each of the parties shall, within three days after such demand, name one arbitrator and they shall select a third arbitrator. If any party shall fail to select an arbitrator within three days after the demand for arbitration is made or if a third arbitrator *165 is not selected within ten days after the demand for arbitration, the additional arbitrator or arbitrators shall be chosen by a Justice of the Supreme Court, or by a Justice of a court of equal jurisdiction. The arbitrators shall act with promptness. The Rules of the American Arbitration Association shall govern and the cost of such arbitration shall be borne equally between the Contractor and Subcontractor. The decision of any two shall be binding on all the parties to the dispute. The decision of the arbitrators upon any question subject to arbitration under this contract, shall be a condition precedent to any right of legal action. The award of the arbitrators must be in writing and if in writing shall not be subject to objection, on account of the procedure or form of the award.
The contract for the work in Allentown contained the same clause except that it provided that if the parties did not choose the arbitrators, they would be chosen by the American Arbitration Association.
The initial question for our determination is whether the controversies presently in litigation between Hudik-Ross and H.R. Shapiro are subject to arbitration under the contracts. Hudik-Ross asserts that because the work has been performed and the disputes in question did not arise until long after the work was completed, they cannot be considered as involving questions that "may arise under this contract and in the performance of the work." It is their position the arbitration clause was intended to apply only to contract disputes which might arise during the work; that after completion of the work, the parties were to resort to the courts.
While arbitration agreements are to be "construed according to the usual methods of contract interpretation whereby a mutual, reasonable and meaningful design is sought from the language used by the parties and maximum effect is given to their intentions," Keppler v. Terhune, 88 N.J. Super. 455, 462 (App. Div. 1965), they "should be read liberally to find arbitrability if reasonably possible," Moreira Constr. Co., Inc. v. Wayne Tp., 98 N.J. Super. 570, 576 (App. Div. 1968), certif. den. 51 N.J. 467 (1968).
In our view Hudik-Ross' construction of the contract provision is hypertechnical. If they were correct in their interpretation, any dispute between the parties would *166 have had to have been resolved by immediate arbitration while the work was still in progress. A more reasonable interpretation would make subject to the arbitration clause any question relating to the contract and involving the manner in which the work was performed. This interpretation is strengthened by the strong public policy in favor of arbitration reflected in N.J.S.A. 2A:24-1 et seq. Cf. Public Utility Workers v. Public Service Co., 35 N.J. Super. 414 (App. Div. 1955), certif. den. 19 N.J. 333 (1955); United Steelworkers v. Warrior & G. Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
Hudik-Ross further contends that even if the matters in dispute are arbitrable, H.R. Shapiro waived its right to arbitrate by reason of its delay in demanding arbitration. They assert Shapiro failed to make a timely demand for arbitration, as required by the contracts, prior to institution of legal action by plaintiffs, and additionally that there was no effective or timely demand in writing for arbitration.
In support of this contention Hudik-Ross states that work on two of the contracts was completed by October 9, 1972 at the latest, and on the third contract, by May 15, 1973. Suits for payment were instituted by them in August 1973. Thereafter, in October 1973 H.R. Shapiro moved for a stay pending arbitration. An order of November 30, 1973 denied such motion because a formal demand for arbitration had not been made. A formal, written demand for arbitration was made in December 1973. In February 1974, after reargument of the motion, an order issued staying the suits pending arbitration. H.R. Shapiro thereupon submitted an arbitrator but Hudik-Ross withheld doing so pending disposition of its motion to dissolve the order to stay and to arbitrate.
Hudik-Ross additionally argues H.R. Shapiro waived its right to arbitration by resorting to the courts through the medium of the suit filed in its behalf by its insurance carrier against Hudik-Ross. However, it is noted, counsel for the carrier has agreed to take a voluntary dismissal of the action or go to arbitration.
*167 It has been stated that an arbitration clause in a contract will be enforced according to its tenor, and the terms thereof will not be "rewritten" by the court for the benefit or advantage of either party. Moreira, supra 98 N.J. Super. at 576. An arbitration agreement may be waived, and upon waiver judicial remedies will be available. La Stella v. Garcia, 128 N.J. Super. 173, 177 (App. Div. 1974). However, our review of the record in the light of these precepts satisfies us that there was no such "delay" on the part of Shapiro as would be tantamount to a waiver of its contractual right to demand arbitration. Nor does it appear that H.R. Shapiro has used arbitration as "a means of furthering and extending the delay." Cf. Poray v. Royal Globe Ins. Co., 90 N.J. Super. 454 (Law Div. 1966).
We are mindful that participation in prolonged litigation, without a demand for arbitration or an assertion of a right to arbitrate, may operate as a waiver. Cf. McKeeby v. Arthur, 7 N.J. 174, 182 (1951). Also generally, Pyramid Electric Co. v. Staklinski, 61 N.J. Super. 278 (App. Div. 1960), certif. den. 33 N.J. 117 (1960); Poray, supra. On the other hand, the mere institution of legal proceedings or the assertion of an affirmative defense by way of an answer, without ostensible prejudice to the other party, do not, in our opinion, constitute a waiver of a right to proceed with arbitration in accordance with the terms of an arbitration agreement. Kincar Franchise Inc. v. Estate of Carey, 118 N.J. Super. 463, 468 (Law Div. 1972).
Then, too, although there was no written demand for arbitration until four months after the institution of plaintiff's lawsuits, the arbitration clause was set forth in an affirmative separate defense in the answers filed by H.R. Shapiro. Plaintiffs were thereby apprised of defendants' position that the matters in dispute should be arbitrated.
Lastly, Hudik-Ross contends the institution of the four other actions containing issues closely related to the initial three suits warrants the consolidation and litigation of all seven actions; that to do otherwise would result in great *168 inconvenience and might lead to inconsistent results and the prejudicial application of the doctrine of collateral estoppel.
We are, of course, cognizant of the salutary objectives of our consolidation procedures, but a contractual right to arbitration cannot be abridged in favor of consolidation. Wm. C. Blanchard Co. v. Beach Concrete Co., 121 N.J. Super. 418 (Ch. Div. 1972); Pyramid Electric Co., supra 61 N.J. Super. at 282.
Likewise, we may not be dissuaded from finding the arbitration clause enforceable because issues settled thereby might conceivably have an effect upon pending law suits. Collateral estoppel with respect to particular controversies or issues cannot be assessed at this juncture of the proceedings since the possibility of such estoppel depends on many factors, including "mutuality of estoppel." Cf. Continental Can Co. v. Hudson Foam Latex Prod., 129 N.J. Super. 426 (App. Div. 1974).
The order of the Law Division entered on May 31, 1974 is reversed and the matter is remanded to the Law Division with a direction to reinstate the orders of February 6, 1974 staying the three contract actions between Hudik-Ross and H.R. Shapiro and requiring that the matters in dispute between them be submitted to arbitration.