39 A.3d 909 (2012)
425 N.J. Super. 48
Karen COLE, Plaintiff-Appellant,
v.
JERSEY CITY MEDICAL CENTER, Defendant, and
Liberty Anesthesia Associates, LLC, Defendant-Respondent, and
Jersey City Medical Center, Third-Party Plaintiff,
v.
Liberty Anesthesia Associates, LLC, Third-Party Defendant.
Docket No. A-4914-09T1
Superior Court of New Jersey, Appellate Division.
Argued March 9, 2011.
Decided March 29, 2012.
*910 Jonathan I. Nirenberg argued the cause for appellant (Resnick Law Group, attorneys; Gerald Jay Resnick, East Hanover, and Mr. Nirenberg, Hackensack, on the brief).
Dominick J. Bratti argued the cause for respondent Liberty Anesthesia Associates (Wilentz, Goldman & Spitzer, attorneys; Mr. Bratti, of counsel and on the brief; Annemarie T. Greenan, Woodbridge, on the brief).
Before Judges FUENTES, ASHRAFI and NUGENT.
The opinion of the court was delivered by
*911 FUENTES, J.A.D.
Plaintiff Karen Cole was terminated from her position as a nurse anesthetist and subsequently brought suit for unlawful termination alleging retaliatory discharge in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8; defamation; tortious interference with contract; and disability discrimination in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. Plaintiff named as defendants her immediate employer, Liberty Anesthesia Associates, LLC (Liberty), and the hospital where she worked, Jersey City Medical Center (Medical Center).
Plaintiff settled her claims against the Medical Center. At that point, the trial court granted Liberty's summary judgment motion as to the counts alleging defamation and termination in violation of public policy. The trial court thereafter granted Liberty's motion to enforce an arbitration clause in plaintiff's employment agreement and dismissed plaintiff's remaining claims against Liberty. Plaintiff now appeals, arguing that Liberty waived its right to compel arbitration by failing to raise this affirmative defense in a timely manner and by actively participating in the litigation until the eve of trial. Independent of this objection, plaintiff also argues that the arbitration clause is unconscionable and unenforceable.
Based on the record before us, we hold that Liberty is precluded from enforcing the arbitration provision in its employment contract with plaintiff. As a matter of litigation strategy, Liberty opted to participate in the suit brought in the Superior Court for a period of twenty months and did not raise the issue of arbitration until three days before the case was scheduled for trial. During this time, the parties completed their reciprocal discovery obligations and the case was ready for trial. This indicates a knowing and deliberate decision by Liberty to forgo raising arbitration as a forum to adjudicate plaintiff's claims. Under these circumstances, Liberty is equitably estopped from compelling plaintiff to submit her claims to arbitration. In this light, we do not reach plaintiff's argument attacking the enforceability of the arbitration provision based on unconscionability.

I

A
Plaintiff began her association with the Medical Center in April 2004 as a per diem Certified Registered Nurse Anesthetist (CRNA). At that time, she was also working in the same capacity at Overlook Hospital in Summit. In September 2004, the Medical Center offered plaintiff a full-time position as a CRNA. Because Liberty had an exclusive contract to provide anesthesia services to the Medical Center, plaintiff's offer of employment came directly from Liberty.
By letter dated September 20, 2004, Liberty sent plaintiff an employment agreement ("the Agreement" or "the Employment Agreement"), stating that plaintiff was being hired as a full-time employee commencing on October 1, 2004. The Agreement contained twelve numbered sections and multiple addenda describing the terms and conditions of plaintiff's employment with Liberty, including salary rate, vacation and sick days, health insurance benefits, and malpractice insurance coverage.
With respect to termination, the Agreement provided, in pertinent part:
5. Either of us may terminate your employment relationship at any time for any reason or no reason (with or without cause) on sixty (60) days' advance written notice to the other. In addition, *912 [Liberty] may automatically and immediately terminate your employment if
....
(b) Your staff privileges at any hospital or your privileges are suspended, revoked, restricted, limited or terminated[.]
Specifically relevant to this case, the Agreement contained the following arbitration provision:
12. Except as set forth in sections 6, 7 and 9 hereof,[1] any claim, controversy or dispute between you and [Liberty] (including without limitation [Liberty's] affiliates, shareholders, employees, representatives, or agents) arising out of or relating to your employment, the cessation of your employment, or any matter relating to the foregoing (any "Controversy"), shall be submitted to and settled by arbitration before a single arbitrator in a forum of the American Health Lawyers Association Alternative Dispute Resolution Service ("AHLA ADRS"), and the arbitration proceeding shall be held at the closest AHLA ADRS site to Englewood, New Jersey.... It is agreed that if any party shall desire relief of any nature whatsoever from the other party as a result of any Controversy, it will institute such arbitration proceedings. All costs of said arbitration, including the arbitrator's fees, if any, shall be borne equally by the parties, unless the arbitration decision and award provides otherwise. All legal fees incurred by each party in connection with said arbitration shall be borne by the party who incurs them, unless the arbitration decision and award provides otherwise. The parties agree that the decision and award of the ADRS shall be final and conclusive upon the parties, in lieu of all other legal, equitable, or judicial proceedings between them, that no appeal or judicial review of the arbitrator's award shall be taken, and that the decision and award may be entered as a judgment in and enforced by, any court of competent jurisdiction. The foregoing requirement to arbitrate Controversies applies to all claims or demands by you, including without limitation any rights or claims you may have under the Age Discrimination in Employment Act of 1967, Section 1981, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1991, the Equal Pay Act, the Family and Medical Leave Act, New Jersey Law Against Discrimination or any other federal, state or local laws or regulations pertaining to your employment or the termination of your employment.
The Agreement concluded with the following statement appearing directly above the signature lines:
I am enclosing two (2) copies of this letter. If the above meets with your approval, please sign and return both copies to me on or before September 27, 2004 at 5:00 p.m. EST. A fully executed copy will then be returned to you for your files. Feel free to call me with any questions or thoughts.
Marc Mizrahi, M.D. executed the Agreement on behalf of Liberty on September 21, 2004. Plaintiff appears to have signed it on the same date.

B
On May 1, 2007, plaintiff met with Dr. Jeffrey Smok, her immediate supervisor *913 and Chairman of the Anesthesia Department at the Medical Center, Mike Curchi, Director of the Medical Center's pharmacy, and Rita Smith, the Medical Center's Senior Vice President of Patient Care Services. The purpose of this meeting was to "discuss issues of pharmacologic diversion and possible substance abuse" by plaintiff. At this meeting, plaintiff was informed that "the pharmacy had found large discrepancies in her accounting of controlled substances."
Plaintiff was told that Medical Center policy requires employees to submit to testing when "any factor ... raises suspicion of substance abuse...." Plaintiff refused because she was concerned that the test results would be misleading or misconstrued due to various medications she was taking for Ehlers Danlos Syndrome[2] and related conditions. These medications included Vicodin, Predocet, Prozac, and Wellbutrin. As a result, the Medical Center suspended plaintiff's CRNA privileges.
That same day Liberty wrote plaintiff "to confirm that [her] employment with the Practice terminated as of the close of business on May 1, 2007 due to the suspension of [her] privileges at Jersey City Medical Center on such date." Liberty noted that under section 5(b) of the Employment Agreement with plaintiff, it had the right to "automatically and immediately terminate [plaintiff's] employment if ... [plaintiff's] staff privileges at any hospital ... [were] suspended, revoked, restricted, limited or terminated...." (Second, forth, and sixth alterations in original).

C
On September 21, 2007, plaintiff filed a complaint in the Law Division against the Medical Center alleging retaliatory discharge in violation of CEPA, defamation, tortious interference with contract, and disability discrimination in violation of the LAD. In the complaint, plaintiff claimed that the allegations of narcotics discrepancies were false. According to plaintiff, these specious accusations were made to provide a means to terminate her employment as retaliation for her voicing numerous concerns about patient-care violations she allegedly witnessed at the Medical Center. According to plaintiff, by making these false claims, the Medical Center tortiously interfered with her employment contract with Liberty and discriminated against her because of her disability. Plaintiff did not name Liberty as a defendant in the initial complaint.

D
On May 23, 2008, approximately eight months after plaintiff filed her compliant against the Medical Center, the trial court granted the Medical Center's motion to implead Liberty as a third-party defendant. On June 3, 2008, plaintiff filed an amended complaint naming Liberty as a direct defendant, asserting retaliation in violation of CEPA, defamation, disability discrimination under the LAD, and termination of employment in violation of public policy. On August 20, 2008, Liberty filed an answer to plaintiff's amended complaint asserting thirty-five affirmative defenses. Conspicuously missing from this otherwise comprehensive list of affirmative defenses was any reference to the arbitration *914 clause in plaintiff's Employment Agreement.
The discovery period for this Track IV[3] case ended on December 30, 2009. A week later, on January 8, 2010, Liberty filed a motion for summary judgment; the Medical Center thereafter also moved for summary judgment. The court scheduled oral argument for both motions on February 19, 2010. On the day of the argument, plaintiff's counsel informed the court that plaintiff had reached a settlement agreement with the Medical Center the night before. Liberty's counsel noted for the record that Liberty had not been informed of the settlement prior to that time or made aware that settlement negotiations had been taking place.
Left only with plaintiff's claims against Liberty, the court proceeded to hear argument on Liberty's motion for summary judgment. The court granted summary judgment in favor of Liberty on the defamation and termination in violation of public policy counts, and denied similar relief on the CEPA and LAD counts.
After several brief adjournments, the court set March 22, 2010 as the definitive trial date. On March 19, 2010, Liberty filed a motion in limine seeking to compel arbitration based on the arbitration clause, denoted as section 12 of its Employment Agreement with plaintiff. Liberty claimed it had not sought to enforce the arbitration clause earlier in the course of this litigation because the Medical Center was not a party to the Employment Agreement. Under those circumstances, Liberty argued plaintiff had an "absolute right to have a jury trial with respect to all of those claims that she had brought" against the Medical Center.
According to Liberty, "it would have not made sense to arbitrate" plaintiff's claims against Liberty in a bifurcated proceeding, while plaintiff's nearly identical claims against the Medical Center were being tried before a jury. As Liberty's counsel explained, Liberty did not want to risk that a jury might reach a different result than a panel of arbitrators. This risk was eliminated when plaintiff settled her claims against the Medical Center. Thus, from Liberty's perspective, arbitration was now appropriate.
Plaintiff argued that Liberty waived its right to compel arbitration because it failed to raise this issue as an affirmative defense in its answer to the amended complaint. According to plaintiff, the failure to raise arbitration in a timely fashion, coupled with Liberty's active participation in this litigation, was a sufficient basis to bar Liberty from raising the arbitration clause just three days before the case was scheduled for trial. Plaintiff also argued that the arbitration clause itself was unconscionable and invalid because it failed to specifically mention that it amounted to a waiver of the right to a jury trial and did not specifically mention that it would apply to CEPA claims. After considering the arguments of counsel, the trial court granted Liberty's motion to compel arbitration and dismissed plaintiff's amended complaint with prejudice.

II
Because the trial court's decision to grant Liberty's motion to compel arbitration was based solely on an issue of law, our review is do novo. Alfano v. BDO Seidman, LLP, 393 N.J.Super. 560, 573, 925 A.2d 22 (App.Div.2007) (citing Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995)). We begin our analysis by reaffirming our commitment *915 to arbitration as a "favored means of dispute resolution." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342, 901 A.2d 381 (2006). That said, an arbitration agreement is construed and enforced under the same legal principles applicable to contracts in general. McKeeby v. Arthur, 7 N.J. 174, 181, 81 A.2d 1 (1951). As such, "a waiver will preclude the enforcement of a contractual provision to arbitrate." Spaeth v. Srinivasan, 403 N.J.Super. 508, 514, 959 A.2d 290 (App.Div.2008).
Under Rule 4:5-4, a responsive pleading must "set forth specifically and separately" the affirmative defense of arbitration. Although not expressly stated in Rule 4:5-4, ordinarily, an affirmative defense that is not pleaded or raised on a timely basis is deemed have been waived. See Aikens v. Schmidt, 329 N.J.Super. 335, 339-40, 747 A.2d 824 (App.Div.2000). However, "[t]here is a presumption against waiver of an arbitration agreement, which can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum." Spaeth, supra, 403 N.J.Super. at 514, 959 A.2d 290.
In Spaeth, we recognized that there is no single test to determine the type of conduct that may result in a waiver of the right to enforce an arbitration provision. Ibid. The key to determining waiver is the absence or presence of prejudice to the party objecting to the arbitration. Id. at 515, 959 A.2d 290.
The arbitration agreement in Spaeth concerned the sale of a client-list between two accountants. Id. at 511, 959 A.2d 290. When a dispute arose concerning the scope and quality of the referrals covered by the contract of sale, see ibid., the buyer filed suit in the Law Division "alleging breach of contract, fraud in the inducement and tortious interference with prospective economic advantage." Id. at 512, 959 A.2d 290. The defendant filed a pro se answer and counterclaim that raised a number of affirmative defenses, but did not mention the arbitration clause. Ibid.
Although the case was given 300 days of discovery under Track II, "[m]inimal discovery transpired." Ibid. After an unsuccessful attempt at mediation, and less than three months after filing her answer, the defendant filed a pro se motion for summary judgment on grounds unrelated to the arbitration issue; the trial court denied the motion. Ibid. Thereafter, the defendant, still acting pro se, filed a motion to dismiss the plaintiff's complaint, "asserting for the first time, just six months after the filing of the complaint," that the action was barred by the contractual arbitration clause. [Ibid.]
Against this backdrop, we held that the defendant had not waived her right to arbitration. We emphasized that this pro se defendant filed her motion just six months after the plaintiff filed his complaint in the Superior Court complaint, and
"well before any meaningful exchange of discoverymuch less the discovery end dateand well in advance of fixing a trial date." Indeed, the litigation had not even reached the point of noticing and taking depositions or filing dispositive motions, save, of course, for defendant's efforts to dismiss the lawsuit.
[Id. at 516, 959 A.2d 290 (emphasis added).]
Our holding in Spaeth relied on Hudik-Ross, Inc. v. 1530 Palisade Avenue Corp., 131 N.J.Super. 159, 167, 329 A.2d 70 (App. Div.1974), in which we upheld the enforcement of an arbitration clause even after the party seeking to compel arbitration waited four months into the litigation to raise the issue. The principal litigants in Hudik-Ross were two contractors who disputed certain claims to payment due for *916 work performed in a construction project. Id. at 162-63, 329 A.2d 70. The plaintiff filed three related breach of contract actions seeking to recover what it claimed the defendant owed under the agreements. Id. at 163, 329 A.2d 70. The defendant filed answers and raised the arbitration provisions in the contracts as an affirmative defense, and obtained a stay pending the outcome of the arbitration. Id. at 163-64, 329 A.2d 70.
The defendants' insurance carrier filed a subrogation claim against the plaintiff. Id. at 164, 329 A.2d 70. Tenants of the site also filed three separate suits for damages. Ibid. The plaintiff filed a motion to consolidate all seven cases and to dissolve the stay previously entered by the court concerning the first three suits. Ibid. The trial court granted the plaintiff's motions consolidating all seven cases and dissolving the stay. Ibid. We granted leave to appeal. Ibid.
On appeal, the plaintiff argued, inter alia, that the defendant "waived its right to arbitrate by reason of its delay in demanding arbitration." Id. at 166, 329 A.2d 70. Under the contracts, the defendant was required to make a demand for arbitration "prior to the institution of legal action by the plaintiffs...." Ibid. In rejecting the plaintiff's argument, we noted that

participation in prolonged litigation, without a demand for arbitration or an assertion of a right to arbitrate, may operate as a waiver. On the other hand, the mere institution of legal proceedings or the assertion of an affirmative defense by way of an answer, without ostensible prejudice to the other party, do not, in our opinion, constitute a waiver of a right to proceed with arbitration in accordance with the terms of an arbitration agreement.
Then, too, although there was no written demand for arbitration until four months after the institution of [the] [p]laintiffs lawsuits, the arbitration clause was set forth in an affirmative separate defense in the answers filed by [the defendant]. [The p]laintiffs were thereby apprised of [the] defendants' position that the matters in dispute should be arbitrated.
[Id. at 167, 329 A.2d 70 (emphasis added) (citations omitted).]
Consistent with this line of reasoning, in Farese v. McGarry, 237 N.J.Super. 385, 394, 568 A.2d 89 (App.Div.1989), we determined that by "filing a complaint which alleged a claim for injury to the property and by filing an answer to the counterclaim which did not allege arbitration as a defense until it was amended approximately nine months after the complaint was filed and two weeks before trial," a landlord waived his right to arbitration under a lease to adjudicate disputes concerning repairs to the premises.
This line of cases militate against Liberty's position. Liberty could have moved to enforce its rights to arbitration immediately after plaintiff amended her complaint to name Liberty as a direct defendant. See Sparwick Contracting Inc. v. Tomasco Corp., 335 N.J.Super. 73, 79-81, 761 A.2d 90 (App.Div.2000). The Medical Center's claims against Liberty would have been stayed pending the outcome of the arbitration. Instead, Liberty knowingly decided not to raise its rights to arbitration because, as a matter of litigation strategy, it wanted to avoid the risk of inconsistent findings by two separate fact-finders. Liberty's actions operated to the detriment of plaintiff.
In Lopez v. Patel, 407 N.J.Super. 79, 83, 969 A.2d 510 (App.Div.2009), the trial court in an automobile accident case granted the defendant's motion to dismiss the plaintiff's *917 complaint based on an adverse finding on proximate cause previously reached in a related PIP arbitration.[4] Applying the doctrine of equitable estoppel, we reversed and reinstated the plaintiff's complaint because the defendant, without justification, waited until the day of trial to raise this dispositive issue. Ibid.
The salient facts in Lopez are succinctly described in the following paragraph:
The PIP arbitration decision was issued on November 13, 2006. Defendants did not raise the collateral estoppel defense until the morning of trial on January 7, 2008, almost fourteen months later. When the trial court asked defendant Patel's attorney at what point he realized that he "had a legitimate issue of collateral estoppel," the attorney answered that the issue "was in the case as soon as the award came out on both sides. Both sides knew it." Defendants provide no explanation for the delay in raising the defense, other than to say that they were not required to raise it before trial.
[Id. at 89, 969 A.2d 510.]
Against these facts, we rejected the plaintiffs' argument that the defendants waived the collateral estoppel defense recognized in Habick. Id. at 90, 969 A.2d 510. We rejected this argument because the facts did not support the conclusion that the defendants "intentionally elected to forgo a collateral estoppel defense." Ibid. However, in a twist of irony, we concluded that the defendants were themselves equitably estopped from raising the holding in Habick at this late stage of the proceedings. Ibid.
As an equitable doctrine, equitable estoppel is intended to preclude a party from asserting "`both at law and in equity... rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.'" Ibid. (second alteration in original) (quoting Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 217 A.2d 617, cert. denied, 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966)).
To establish equitable estoppel a party:
"must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment."
[Id. at 92, 969 A.2d 510 (quoting Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984)).]
With these principles in mind, we noted that
[the p]laintiffs relied on the trial dates set by the court and unchallenged by defendants with the expectation that their negligence claims would be tried. During the fourteen-month interval that the collateral estoppel defense was available, plaintiffs took additional discovery in January 2007 by deposing Patel's expert, and they prepared for several "real" trial dates. [The p]laintiffs traveled from their home in Georgia for trial and paid thousands of dollars in fees for expert testimony and other services at the trial they expected to start on January 7, 2008.

*918 [Id. at 93, 969 A.2d 510]
Against these facts, we balanced the equities in favor of the plaintiffs and estopped the defendants from asserting their right to dismiss the plaintiffs' complaint because they unjustifiably waited until the day of trial to raise this dispositive issue. Id. at 94-95, 969 A.2d 510.
Our holding in Lopez, and the principles animating our analysis therein, apply with equal force here. Liberty voluntarily and intentionally decided to relinquish its right to arbitration as a forum to adjudicate plaintiff's claims as a matter of litigation strategy. Plaintiff relied on Liberty's conduct in this respect to her detriment. We take notice that getting a case ready for trial before a jury requires a great deal more preparation than presenting a case before a panel of arbitrators. During the twenty months leading to the scheduled trial date, plaintiff actively engaged in discovery and prepared the case for trial. Liberty's decision to seek enforcement of the arbitration provision contained in plaintiff's Employment Agreement three days before the trial date is precisely the type of conduct we repudiated in Lopez. See id. at 91, 969 A.2d 510.
Reversed and remanded.
NOTES
[1] Section 6 restricted plaintiff from working as a CRNA in this State following her termination; section 7 prohibited plaintiff from soliciting Liberty's patients following her termination; section 9 obligated plaintiff to keep confidential patient information and other records she had access to while employed by Liberty.
[2] Ehlers Danlos Syndrome is "a group of inherited disorders marked by extremely loose joints, hyperelastic skin that bruises easily, and easily damaged blood vessels," which can cause, among other symptoms, joint dislocation and pain. Ehlers-Danlos syndrome, PubMed Health, http://www.ncbi.nlm.nih.gov/ pubmedhealth/PMH0002439 (last visited Mar. 20, 2012).
[3] Track IV cases have 450 days of discovery. R. 4:24-1(a). Time for discovery runs from the filing of the first answer of the originally named parties, or ninety days after the first defendant is served, whichever occurs first. Ibid.
[4] Habick v. Liberty Mut. Fire Ins. Co., 320 N.J.Super. 244, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999).