**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3062-20

TEVIN WELCOME,

    Plaintiff-Appellant,

v.

HUFFMASTER
STAFFING, INC.,
BRAD CARR,
KELLY JOHNSON, and
TREVOR FANDALE,

    Defendants-Respondents.

_____

Argued January 24, 2022 – Decided February 8, 2022

Before Judges Sabatino, Mayer and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3390-20.

Peter D. Valenzano argued the cause for appellant (McComber McComber & Luber, PC, attorneys; Lauren M. Hill, of counsel and on the briefs; Peter D. Valenzano, on the briefs).

R.J. Cronkhite (Dinsmore & Shohl LLP) of the Michigan bar, admitted pro hac vice, argued the cause

for respondent (Dinsmore & Shohl LLP, attorneys; Joshua M. Link, of counsel and on the brief; R.J. Cronkhite, on the brief).

PER CURIAM

This appeal arises out of plaintiff's completion of an online application for a job as a driver with defendants' company. The employment application contained a form arbitration provision, which recited that the job applicant agreed that any dispute arising out of his employment, including discrimination claims, would be resolved through arbitration instead of judicial adjudication.

After starting to work for the company as an employee van driver, plaintiff became concerned the company was not enforcing COVID-19 mask and safety precautions, and that he would be infected by van passengers and fellow employees who did not wear masks. Plaintiff contends he was particularly concerned he could transmit the virus to his six-year-old son, who has health problems. Plaintiff allegedly complained about this to his superiors, and they discharged him soon thereafter.

Plaintiff sued the company and several of its principals in the Law Division, claiming he was terminated in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -50, and the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 to -14. Defendants filed

a motion to dismiss, and then an answer after plaintiff amended his complaint. Defendants' answer included thirteen affirmative defenses, none of which mentioned the arbitration provision. Defendants also filed a demand for a trial by jury.

Ten months went by. During that time, the parties exchanged document discovery and interrogatory responses, and some motion practice occurred. Eight days after the company took plaintiff's deposition, with depositions of the two individual defendants having been scheduled and pending, the company raised for the first time the arbitration clause.

Defendants moved to dismiss the lawsuit and compel arbitration. The depositions of the individual defendants were cancelled by mutual agreement of counsel. In opposition, plaintiff argued the arbitration clause was unenforceable because it was unconscionable and not sufficiently clear or prominent. He also relied upon a 2019 amendment to the LAD, N.J.S.A. 10:5-12.7, that prohibits such waivers purporting to deprive plaintiffs in discrimination cases of their substantive and procedural rights, including that to a jury trial. Plaintiff further argued that defendants waived their ability to compel arbitration by not asserting that threshold forum-related issue for over ten months.

A-3062-20

After oral argument, the motion judge issued a written opinion rejecting plaintiff's arguments and compelling arbitration. This appeal ensued.

For the reasons that follow, we reverse the trial court's order. We do so because defendants, by their conduct within the court case and their lengthy inattentiveness to their company's own contractual provision, waived the opportunity to compel arbitration. Such a waiver is equitably appropriate in the circumstances presented here, under the multi-faceted analysis prescribed by the Supreme Court in Cole v. Jersey City Medical Center, 215 N.J. 264, 280-81 (2013). Because of that waiver, we need not address the remaining arguments which plaintiff advances for reversal.

I.

Since our disposition turns on the forum-related waiver point, we focus our discussion chiefly on the matter's procedural background.

The Online Employment Application

On March 18, 2020, plaintiff Tevin Welcome, then a resident of Texas, electronically filled out an employment application form for a trucking position with defendant Huffmaster Staffing, Inc. through the job listings website Indeed.com. Plaintiff is an experienced truck driver who has worked for several different companies since the completion of his military service. He is married

and the father of four minor children, one of whom suffers from asthma. Huffmaster, a corporation headquartered in Michigan, provides strike management and security services.

The company's job application is four pages long. The first two-and-a-half pages mostly consist of blank space for the applicant's personal and work history information. The last page-and-a-half of the form comprises four sections in slightly smaller font titled, sequentially, "DISABILITY ACCOMMODATION," "NOTICE OF RIGHTS FOR DISABLED PERSONS," "NOTICE OF MEDICAL EXAMINATION," and "AUTHORIZATION AND UNDERSTANDING[.]" The fourth and last section is the lengthiest, comprising nine numbered clauses.

The fifth clause included under the "AUTHORIZATION AND UNDERSTANDING" section reads, in relevant part:

> 5. <u>I understand and agree</u> that in the event a dispute arises concerning my employment with and/or termination from the Company the <u>sole and exclusive method for resolving any and all disputes arising out of my employment or termination from the Company</u> or in any way related to any alleged wrongful acts on the part of the Company, its affiliates, directors, shareholders, agents, members, partners, officers or employees relating to my employment, <u>including but not limited to claims of breach of contract, wrongful discharge, retaliatory discharge claims</u>, tort claims, invasion of privacy, slander, defamation, and/or any statutory

A-3062-20

claim <u>including but not limited to discrimination or other violation</u> under Title VII of the Federal Civil Rights Act, Age Discrimination in Employment Act, Americans with Disabilities Act, Whistle Blowers Protection Act, Bullard-Plawecki Employee Right to Know Act and the Michigan Elliot-Larsen Civil Rights Act <u>shall be through the procedures and policies of the American Arbitration Association; thereby waiving my right to adjudicate these claims in a judicial forum</u>. I agree not to bring, and expressly waive my right to bring any action or claim under this Agreement as a member of any purported class or representative proceeding.

[(Emphasis added).]

The sixth through ninth provisions under "AUTHORIZATION AND UNDERSTANDING" include further conditions applicable to any such claim brought against the company:

6. I agree that any arbitration or judicial proceeding arising out of a dispute relative to my employment with the Company shall not be brought unless the same is commenced <u>within One Hundred Eighty (180) days</u> following the incident giving rise to such dispute. <u>My failure to commence such proceedings within [that] period shall result in the extinguishment of any rights I may have to prosecute such claims or actions. . . .</u>

7. I agree that <u>if</u> I should bring any action or claim arising out of my employment against the Company in which <u>the Company prevails, I will pay the Company any and all such costs incurred by the Company in defense</u> of any such claim or action, including attorney fees, court costs, arbitration fees and all other costs associated with such action.

6

. . . .

9. <u>I acknowledge and agree that I have reviewed and entered into this Agreement knowingly and voluntarily</u> as a condition of employment and/or continued employment with the Company. This Agreement can only be changed or revoked by written agreement signed by both the Applicant and an authorized manager of the Company.

[(Emphasis added).]

Since plaintiff filled out and signed the employment application from his home through a third-party website, no representative of defendants was present to answer questions or explain any component of the application with plaintiff. Plaintiff did not retain an attorney or other representative to review the form with him.

Plaintiff alleges he did not understand the arbitration clause. He contends he would not have signed it had he recognized, among other things, he was waiving his right to a jury trial, would have to split the costs of arbitrating with defendants, and would be forced to arbitrate in Michigan if he brought a claim.

<u>Plaintiff's Employment and Termination</u>

Plaintiff's employment with the company turned out to be short-lived, lasting only ten days. Although he had applied for a truck-driving position, he ended up accepting a position as a van driver transporting other workers, as that was the only available position with the company at the time.

7

Plaintiff stated that he was aware of the dire state of the COVID-19 pandemic in New Jersey and New York when he was to leave Texas to start working for defendants, but was desperate for income, and somewhat consoled by New Jersey's stringent mask mandates.

Plaintiff alleges[1] he was soon dismayed to find that few workers or clients he would transport in the company van adhered to the mask mandate. Plaintiff alleges that when he brought these concerns to his employer, nothing was done to enforce safety protocols among the workers or to ensure that a colleague who had exhibited symptoms while in close proximity to plaintiff and others at the company would be tested for COVID-19. Further, after discussing his concerns with colleagues, defendants allegedly scolded plaintiff for facilitating those discussions.

According to plaintiff, within a day or two after raising these health concerns, he was effectively cut off from communication with the company, asked to return his van keys, and was terminated on April 15, 2020. When he asked for an explanation, plaintiff alleges he was told that it was against defendants' company policy to have employees discuss "non-work-related

---

[1] In their answer to the complaint, defendants deny most of these allegations.

A-3062-20

issues" among each other, and to hold large group discussions about work-related issues.

<u>Litigation Commences</u>

On June 11, 2020, plaintiff filed a complaint and jury demand in the Law Division alleging defendants had violated the LAD and CEPA. Plaintiff served along with his complaint a first set of document requests, interrogatories, and discovery demands relating to punitive damages. Defendants, in turn, filed a motion to dismiss plaintiff's complaint for failure to state a claim pursuant to <u>Rule</u> 4:6-2(e).

In response to their motion to dismiss, plaintiff was granted leave to file an amended complaint with the consent of defendants. Plaintiff's amended complaint included only two counts out of the original four: one for retaliation in violation of CEPA, the second for associational disability discrimination, disparate treatment, and unlawful termination under LAD. Plaintiff reiterated a demand for trial by jury.

Defendants' answer to plaintiff's amended complaint, filed on August 21, 2020, denied the majority of plaintiff's allegations. Defendants also echoed plaintiff's demand for a jury trial and asserted thirteen affirmative defenses, none of which mentioned the arbitration clause.

On September 18, 2020, defendants produced a first set of documents in response to plaintiff's request, which were numerically Bates-stamped page by page. Notably, the documents included the employment application containing the arbitration clause, but defense counsel did not invoke it or specifically draw plaintiff's attention to it at that time.

On October 14, 2020, defendants provided answers to plaintiff's first set of interrogatories. Again, those answers, including a five-paragraph over-arching "Preliminary Statement," did not refer to the arbitration clause.

In response to perceived deficiencies in defendants' discovery responses, the parties exchanged letters, and defendants turned over additional discovery. Plaintiff filed a motion for a protective order barring defendants from seeking discovery from his former employers. After oral argument, the trial court denied that motion on December 18, 2020, and defendants duly requested plaintiff to supply his former employers' contact information.

Further deficiency letters, discovery demands, and document productions were exchanged between the time of the trial court's December 18, 2020 order and April 19, 2021, the date on which plaintiff submitted to a full-day deposition. Plaintiff, meanwhile, had noticed the depositions of two of the

named individual defendants, and counsel had scheduled them to take place after April 21.

As defense counsel represented to us, he had not personally realized until a few days before plaintiff's deposition that the company's employment application contained a mandatory arbitration clause.[2] According to plaintiff's counsel, it was not until April 27, 2021—eight days after defense counsel had taken plaintiff's deposition and over ten months after defendants had been served with the complaint—that defendants' counsel mentioned to him the existence of the arbitration provision and of defendants' intent to enforce it.

The next day, April 28, defendants filed a motion for leave to amend their affirmative defenses and compel arbitration. Plaintiff opposed the motion and cross-moved for attorneys' fees and costs incurred in defending the motion.

The May 17, 2021 Motion Argument

On May 17, 2021, the trial court heard oral argument on defendants' motion to compel arbitration, and plaintiff's cross-motion for sanctions. Defense counsel argued the arbitration clause was clear, and that it "unmistakably" waived plaintiff's right to litigate his claims in a judicial forum.

---

[2] We accept counsel's representation and note our appreciation for his candor.

Plaintiff's counsel, in turn, argued that the arbitration clause was both procedurally and substantively unconscionable. He argued the clause was "buried at the bottom of an employment application . . . where even [defendants' counsel] wasn't able to notice it[,]" and that "[n]o reasonable person would assume that they were waiving the right to a jury trial by signing this document."

Among other things, plaintiff's counsel asserted the clause was not labeled as an arbitration clause, that there was a lack of "conspicuous language" to that effect, "unequal bargaining power" between the parties, that plaintiff lacked any "meaningful choice or opportunity to review it with counsel, or negotiate[,]" that arbitration would be compelled in Michigan, and that the clause includes an "unfair and one sided" cost allocation provision, providing that claimants must split the cost of arbitration with the employer-defendants. Plaintiff's counsel further argued the clause "doesn't explain exactly what arbitration is or how it's different from proceeding in a court of law."

Apart from those arguments about the provision itself, plaintiff's counsel argued defendants had waived their ability to enforce the arbitration clause after litigating the case for almost a year without raising it. In support of this point, plaintiff's counsel cited to Cole, 215 N.J. at 264, among other cases.

Plaintiff's counsel detailed the multiple steps that had been taken over the "10 months and 16 days" of litigation between the parties before defendants sought to invoke the arbitration provision as an affirmative defense. Namely, plaintiff's counsel pointed to settlement discussions that had started taking place early on after the filing of plaintiff's claim on June 11, 2020; his consent to defendants' motion to have counsel appear pro hac vice; defendants' motion to dismiss filed in July 2020; plaintiff's opposition and cross-motion for relief to file an amended complaint; defendants' answer, including thirteen affirmative defenses; document production by defendants in September 2020; defendants' responses to interrogatories in October 2020; multiple exchanges of deficiency letters from November 2020 through January 2021; oral argument appearances before the trial court in December 2020; and lastly a full-day deposition of plaintiff on April 19, 2021, before defendants made their first mention of the arbitration clause over a week later on April 27, 2021.

Plaintiff's counsel argued the timing of defendants' motion to compel arbitration, following plaintiff's lengthy deposition and twenty days before two of the individual defendants were scheduled to be deposed, is indicative of an unfair "litigation strategy" and was prejudicial to him. Defendants' counsel,

13

meanwhile, did not present to the trial court a specific reason for their delay in raising the arbitration provision.

Lastly, the parties briefly addressed N.J.S.A. 10:5-12.7, a state law declaring any employment contract provision that "waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment against public policy and unenforceable." N.J.S.A. 10:5-12.7. Plaintiff's counsel argued this provision, enacted in 2019, precludes dismissal of his lawsuit under the LAD and CEPA. Defendants' counsel countered this statutory provision is preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 to 16, as construed by the United States Supreme Court.

The Trial Court's June 15, 2021 Opinion

Following the motion argument, the trial court issued an order and ten-page written opinion on June 15, 2021, granting defendants leave to file amended affirmative defenses, dismissing plaintiff's amended complaint, and compelling arbitration.

With respect to defendants' motion to amend their affirmative defenses to include enforcement of the arbitration clause, the court noted that motions for leave to amend generally are to be granted liberally, notwithstanding the merits of any such amendment. See Prime Accounting Dep't v. Twp. of Carney's Point,

154 N.J. 437, 456 (1998).  The court applied that general principle in granting leave to defendants.

Next, the trial court found defendants' arbitration provision to be enforceable.  As a threshold matter, the court concluded the FAA preempts N.J.S.A. 10:5-12.7.  In this regard, the court cited AT&T Mobility, LLC v. Concepcion, 563 U.S. 33 (2011), for the general proposition, as the court summarized it, that the "FAA was enacted to ensure the enforcement of private arbitration agreements."  The trial court also cited an unpublished New Jersey federal district court opinion holding that the FAA preempts this specific 2019 provision of the LAD.[3]

As to the substance of the arbitration provision itself, the court agreed with defendants that the plain language of the agreement placed plaintiff sufficiently on notice that he was waiving substantive rights at issue in this case. The court found the provision "clearly and unambiguously sets forth language for the waiver of a jury trial and broad distinction between a jury trial and arbitration[,]" and explicitly encompasses the substantive rights plaintiff seeks to vindicate  The court also pointed out that plaintiff acknowledged, by his

---

[3]  In compliance with Rule 1:36-3, we do not present the citation here.

signature on the electronic job application, that the arbitration provision is a condition of employment and that he understood the terms of that provision.

Additionally, the court ruled the arbitration clause was neither substantively nor procedurally unconscionable. In this regard, the court found that plaintiff had "ample opportunity" to review the terms of the provision when he completed the job application. The court perceived "no 'gross disparity'" between the parties' bargaining positions, no indication that plaintiff could not read or understand the provision, and no otherwise deceptive or contriving elements within the online application itself.

Although the bulk of its written opinion addressed these points, the trial court also briefly discussed and rejected plaintiff's argument under Cole that defendants had waived their chance to enforce the arbitration provision by not taking action sooner. The court's full discussion of that issue was as follows:

> Unlike Cole, defendants' application is not made on the eve of trial. Discovery is ongoing since the parties engaged in written discovery between September 18, 2020 and January 14, 2021, and depositions commen[c]ed on March 4, 2021. There has been minimal motion practice. No trial date has been scheduled. Finally, there is no prejudice to the parties.

Lastly, plaintiff's cross-motion for attorney's fees and costs was summarily denied, in light of the trial court's adverse findings.

A-3062-20

II.

This appeal followed. Although plaintiff offers a host of arguments for why this arbitration provision should not be enforced, and defendants present forceful counterarguments, we need not address them in this opinion. That is because we conclude that, under the circumstances presented, the Cole factors strongly weigh against permitting defendants' belated invocation of their company's boilerplate arbitration provision.

We review the trial court's application of Cole de novo. As the Court stated in Cole, "whether a party waived its arbitration right is a legal determination subject to de novo review." Cole, 215 N.J. at 275 (citing Manalapan Realty L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) and In re S&R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir. 1998)). That said, any "factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error." Cole, 215 N.J. at 275 (citing Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). Here, the trial court did not take any testimony during the motion proceeding or make any witness credibility findings. Hence, the trial court's observations about facts pertinent to the waiver

17

analysis are based upon the very same written record that we just as readily can review.  No special deference to the trial court is therefore warranted.

As a matter of law, it is well established that a waiver is a party's voluntary relinquishment of a known right.  Cole, 215 N.J. at 276 (citing Knorr v. Smeal, 178 N.J. 169, 177 (2003)).  It is equally well established that parties may impliedly waive their rights through both actions and inaction.  Id. at 276-77 ("a party need not expressly state its intent to waive a right; instead, waiver can occur implicitly if 'the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference.'") (Quoting Knorr, 178 N.J. at 177).

Thus, a "fact-sensitive analysis" may, depending on the circumstances, reveal that one or both parties have "waive[d] their right to arbitrate[.]"  Cole, 215 N.J. at 276 (citing Wein v. Morris, 194 N.J. 364, 376 (2008)).  An agreement to arbitrate a dispute can be overcome where there is "clear and convincing evidence that the party asserting [arbitration] chose to [litigate] in a different forum[,]" although such waiver is "never presumed."  Ibid. (Internal citation omitted).

The Court instructed in Cole that when analyzing whether a party has waived its right to arbitration, a court "must focus on the totality of the

circumstances." Id. at 280. Courts should consider, among other things, the following seven enumerated factors:

(1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.

[Id. at 280-81.]

This multi-factor analysis is fact-sensitive and reviewed de novo on appeal. Id. at 275, 280. No one factor is dispositive. Id. at 281.

The trial court's opinion did not methodically address each of these seven Cole factors, but it did comment upon several of them within the passage we have quoted above. With all due respect to the trial court, we conclude the factors heavily weigh in favor of plaintiff in this matter. Before addressing those factors one-by-one, we make some overarching observations.

The FAA and the laws of New Jersey generally recognize that arbitration is a viable mechanism of dispute resolution where it has been mutually chosen by the parties as an alternative to litigation in the courts. See, e.g., AT&T

A-3062-20

Mobility, LLC, 563 U.S. at 33; Martindale v. Sandvik, Inc., 173 N.J. 76 (2002); Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001). Arbitration is intended to be a faster and cheaper process for the parties than traditional adjudication. Alexander v. Gardner-Denver Co., 415 U.S. 36, 58 (1974); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 324 (2019). Discovery in arbitration can be streamlined, and the grounds for setting aside an arbitration award are very narrow. See, e.g., New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32; Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190, 201-02 (2013) ("Consistent with the salutary purposes that arbitration as a dispute-resolution mechanism promotes, courts grant arbitration awards considerable deference.").

These advantages of speed, efficiency, and cost-saving can be squandered, however, if arbitration is not invoked and commenced with reasonable promptness. See Cole, 215 N.J. at 282-83 (finding that a party's conduct reflective of "a commitment to try the case" can "undermine the fundamental principles underlying arbitration.") It is a waste of the public's scarce resources if judges and court staff devote hours of time and effort to a case that should have been in arbitration from the outset. Other pending cases that truly belong

20

in court should be given attention and priority. Duplication of effort in two forums should be avoided where possible.

In addition, the process to channel a dispute into arbitration should be administered fairly. A litigant should not be permitted to reap the benefits of the discovery or adjudicative process in court, and then leave the opposing party without a fair equivalent when a case is transferred to arbitration.

The Cole factors essentially subsume these public policy values. In situations where a litigant that was or should have been aware it had a right to arbitrate a matter waits unreasonably to invoke that right, our courts are not to automatically grant that litigant's belated motion to compel arbitration. Instead, a factor-by-factor scrutiny under Cole guides the decision. We now turn to those factors.

Factor No. 1: Defendants' Delay. As we have already noted, defendants waited over ten months to invoke their company's arbitration provision. No tenable justification for that delay has been presented. The company and its representatives had plaintiff's employment application containing the arbitration provision accessible within their own files. The company at least had constructive notice of it from the outset. It was the company's own self-created form document and was not unique to this plaintiff.

21

It is ironic that defendants have argued, in an effort to legitimize the arbitration provision, that the provision is prominent and clear on its face, and that it should have been noticed by the plaintiff himself. The same ability-to-notice should reciprocally apply to the company, which, after all, drafted and inserted the provision into the job application. Moreover, when defendants produced the employment application as a document in discovery pursuant to Rule 4:18-1 only about three months into the case, they and their counsel should have read its contents. It appears the provision was simply overlooked, for no good reason. As a matter of guidance, we should not endorse or lightly excuse such inattentiveness.[4]

The trial court distinguished Cole factually because the arbitration provision in that case was not invoked until the brink of trial. But a waiver has been found to have occurred within a comparable time frame. See, e.g., Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925-26 (3rd Cir. 1992) (holding that an eleven-month delay in demanding arbitration coupled with participation in discovery and filing motions was sufficient to find a waiver).

---

[4] Again, we do not individually single out defendant's out-of-state attorney of record, who frankly acknowledged to us that he did not notice the arbitration provision until he was preparing for plaintiff's deposition. Presumably the provision also could have spotted by local counsel, a paralegal, or company officials involved in the case.

A-3062-20

The ten months that elapsed here was a substantial period of time, not a brief interval. Cf. Spaeth v. Srinivasan, 403 N.J. Super. 508, 516 (2008) (finding no waiver where "[d]efendant, who appeared pro se throughout, asserted her right to arbitration only six months after plaintiff filed his … complaint and well before any meaningful exchange of discovery"); Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J. Super. 159, 167 (App. Div. 1974) (finding no waiver where arbitration was demanded "four months after the institution of plaintiff's lawsuit" and the clause was included among defendant's affirmative defenses).

For these many reasons, the ten-month delay here weighs in plaintiff's favor.

Factor No. 2: Motion Practice. This second factor also tips in favor of plaintiff, although not as heavily as the first factor. To be sure, there were no dispositive motions decided by the trial court. However, the parties did move for and obtained rulings on defendant's initial motion to dismiss under Rule 4:6-2(e), and on plaintiff's motion for a protective order concerning his past employers. Resources were expended and time was devoted to these motions, not extensively but also not inconsequentially.

Factor No. 3: Litigation Strategy. We do not presume to know exactly why defendants handled this file the way they did, and why they failed to advise plaintiff's counsel much sooner about their right and desire to compel arbitration. It makes no sense why defendants would demand a trial by jury if they knew that the lawsuit eventually would be removed from the court's docket.

It is also puzzling why defendants did not immediately raise the provision with plaintiff's attorney once they noticed it but instead said nothing about it until after they had extracted his deposition testimony. The timing resulted in an uneven situation in which defendants got to complete a key deposition of the opposing party, but plaintiff did not get to depose the two named defendants with the benefit of the Rules of Court and the possible oversight of a Superior Court judge if intervention were needed. We recognize that the defense is apparently willing to cooperate in the arbitration to reschedule those two depositions, but the imbalance is troubling. Whether by design or not, the sequence of events was not to plaintiff's strategic advantage.

Factor No. 4: The Extent of Discovery. This factor weighs in favor of plaintiff. The parties exchanged considerable documents, traded interrogatories and responses, and completed a critical deposition. Although more discovery is to be accomplished, a significant amount has already been done.

24

Factor No. 5: Not Raised in the Pleadings or Otherwise Noticed. As we have already noted, the pleadings filed by defendants, including thirteen affirmative defenses, gave no hint the company would be invoking arbitration. Defendant's jury demand signaled an opposite expectation to have the matter litigated in court. This factor weighs for plaintiff.

Factor No. 6: Proximity to the Date of Trial. No trial date had yet to be assigned to this Track III case. This factor weighs for defendants.

Factor No. 7: Resulting Prejudice Suffered By Plaintiff. This factor weighs in plaintiff's favor, if not overwhelmingly. We are mindful that the discovery already amassed during the court litigation most likely can be used as potential evidence in the arbitration. However, plaintiff will lose the benefit of the Rules of Court, including the presumptive right to take depositions. By comparison, Rule 9 of the Employment Arbitration Rules of the American Arbitration Association contains no such right but instead only permits depositions if the arbitrator deems them "necessary." Am. Arb. Ass'n, Employment Arbitration Rules and Mediation Procedures r. 9 (rev. 2017); see also N.J.S.A. 2A:23B-17(c) ("An arbitrator may permit such discovery as the arbitrator decides is appropriate in the circumstances, taking into account the needs of the parties to the arbitration proceeding and other affected persons and

A-3062-20

the desirability of making the proceeding fair, expeditious, and cost effective.").

Further, plaintiff in arbitration loses the oversight of a Superior Court judge and access to this court and the Supreme Court on any matters of appellate review that may arise.

Taking these considerations as a whole, we conclude from our de novo review that defendants, by their apparent inattention and delay, have waived the ability to compel arbitration in this particular case. If arbitration is designed to be a faster and more efficient process, the delay in this case of nearly a year before the company took action to compel it represents a poor counter-example. We ought not encourage or endorse such lateness where it could have been easily avoided by the company or its advocates more carefully checking its own files and forms.

Reversed and remanded to the trial court, and the matter restored to the Law Division docket. The trial court shall convene a case management conference within thirty days to plan the completion of the pretrial process. No fees or costs are warranted.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3062-20