SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## Willingboro Mall, LTD. v. 240/242 Franklin Avenue, L.L.C. (A-62-11) (069082)

**Argued February 27, 2013 -- Decided August 15, 2013**

**ALBIN, J., writing for a unanimous Court.**

The issues in this appeal are (1) whether Rule 1:40-4(i) requires a settlement agreement reached at mediation to be reduced to writing and signed at the time of mediation, and (2) whether plaintiff waived the privilege that protects from disclosure any communication made during the course of mediation.

In February 2005, Willingboro Mall, LTD. (Willingboro), the owner of the Willingboro Mall, sold the property to 240/242 Franklin Avenue, L.L.C. (Franklin). Willingboro subsequently filed a mortgage foreclosure action on the mall property and the Honorable Ronald E. Bookbinder, J.S.C., directed the parties to participate in non-binding mediation. The mediation was conducted on November 6, 2007, in the offices of Franklin's attorney. Willingboro's manager, Scott Plapinger, and attorney, Michael Z. Zindler, Esq., appeared on behalf of the company. Franklin offered $100,000 to Willingboro in exchange for settlement of all claims and for a discharge of the mortgage on the mall property. On behalf of Willingboro, Plapinger orally accepted the offer in the presence of the mediator and affirmed that he gave his attorney authority to enter into the settlement. The terms of the settlement, however, were not reduced to writing before the conclusion of the mediation session.

On November 9, 2007, Franklin forwarded to Judge Bookbinder and Willingboro a letter announcing that the case had been "successfully settled" and setting forth the purported terms of the settlement. Franklin's attorney sent a separate letter to Willingboro stating that he held $100,000 in his attorney trust account to fund the settlement, that Franklin had executed a release, and that the monies would be disbursed when Willingboro filed a stipulation of dismissal in the foreclosure action and delivered a mortgage discharge on the mall property. Willingboro rejected the settlement terms and refused to sign a release or to discharge the mortgage. Franklin filed a motion to enforce the settlement agreement and attached certifications from its attorney and the mediator that revealed communications made between the parties during the mediation. Willingboro did not move to dismiss the motion, or strike the certifications, based on violations of the mediation-communication privilege. Instead, in opposition to the motion to enforce, Willingboro requested an evidentiary hearing and the taking of discovery, and filed a certification from its manager, Scott Plapinger. The trial court ordered the taking of discovery and scheduled a hearing to determine whether an enforceable agreement had been reached during mediation.

The parties agreed that they were "waiv[ing] any issues of confidentiality with regard to the mediation process" and agreed that the testimony elicited could be used for purposes of the motion to enforce the settlement agreement only and not for purposes of the underlying foreclosure action. Despite the waiver, the mediator declined to testify regarding the mediation in the absence of an order from Judge Bookbinder. Judge Bookbinder pointed out to the parties' attorneys that under Rule 1:40-4(d), "unless the participants in a mediation agree, no mediator may disclose any mediation communication to anyone who was not a participant in the mediation." Willingboro's attorney stated that the parties agreed to the disclosure. The parties then consented to the court order compelling the mediator to testify. The mediator was deposed and divulged mediation communications.

After the close of discovery, the Honorable Michael J. Hogan, P.J.Ch., conducted a four-day evidentiary hearing. On the second day of the hearing, Willingboro reversed course and moved for an order expunging "all confidential communications" disclosed, arguing that mediation communications are privileged under the New Jersey Uniform Mediation Act (Mediation Act) and Rule 1:40-4. Judge Hogan ruled that Willingboro had waived the mediation-communication privilege and held that "a binding settlement agreement was reached as a result of [the] court-directed mediation." The judge found that "[e]ven though the [settlement] terms were not reduced to a formal writing at the mediation session," an agreement had been reached. The court granted Franklin's motion to enforce the settlement as memorialized in its November 9 letter.

The Appellate Division affirmed the trial court's enforcement of the settlement agreement. The panel found that Willingboro "waived the confidentiality normally afforded to" mediation sessions and therefore the trial court properly proceeded to "determine whether the parties had reached a settlement."

The Supreme Court granted Willingboro's petition for certification. 209 N.J. 97 (2012).

**HELD:** Plaintiff expressly waived the mediation-communication privilege and disclosed privileged communications. The oral settlement agreement reached by the parties is upheld. Going forward, however, a settlement that is reached at mediation but not reduced to a signed written agreement will not be enforceable.

1. Public policy favors the settlement of disputes, and the court system encourages mediation as an important means of achieving that end. Mediation is governed by Rule 1:40 to 1:40-12, the Mediation Act, N.J.S.A. 2A:23C-1 to -13, and the rules of evidence, N.J.R.E. 519. The success of mediation as a means of encouraging parties to compromise and settle their disputes depends on confidentiality. Confidentiality promotes candid and unrestrained discussion, a necessary component of any mediation intended to lead to settlement. To this end, court and evidence rules and the Mediation Act confer a privilege on mediation communications, ensuring that participants' words will not be used against them in a later proceeding. (pp. 15-17)

2. Rule 1:40-4(c) provides that a communication made during the course of mediation is privileged. N.J.S.A. 2A:23C-2 broadly defines a "[m]ediation communication" as any "statement, whether verbal or nonverbal or in a record, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." The Mediation Act and the rules of evidence both, in identical language, confer a privilege on mediation communications. The mediation-communication privilege, however, is not absolute. Court and evidence rules and the Mediation Act carve out limited exceptions to the privilege. The first is the signed-writing exception, which allows a settlement agreement reduced to writing and properly adopted by the parties to be admitted into evidence to prove the validity of the agreement. The second exception is waiver. A valid waiver requires not only that a party "have full knowledge of his legal rights," but also that the party "clearly, unequivocally, and decisively" surrender those rights. Knorr v. Smeal, 178 N.J. 169, 177 (2003). (pp. 17-21)

3. The signed–writing exception does not apply in this case because, early in the proceedings, Willingboro did not seek to bar enforcement of the settlement based on the lack of a signed written agreement. The Mediation Act and the evidence rules generally prohibit a mediator from making an "oral or written communication" to a court other than to inform the court whether a settlement was reached. Here, the mediator went far beyond merely communicating to the court that the parties had reached a settlement. By validating the contents of Franklin's letter, the mediator breached the privilege. Willingboro did not consent in advance to the disclosure of mediation communications to the court. But despite Franklin's violation of the mediation-communication privilege, Willingboro did not timely move to strike or suppress the disclosures of the mediation communications. Instead, Willingboro disclosed mediation communications and thereby itself breached the mediation-communication privilege, completely opening the door. Although Franklin instituted the enforcement litigation and fired the first shot that breached the privilege, Willingboro returned fire, further shredding the privilege. (pp. 22-28)

4. If the parties to mediation reach an agreement to resolve their dispute, the terms of that settlement must be reduced to writing and signed before the mediation comes to a close. Going forward, a settlement that is reached at mediation but not reduced to a signed written agreement will not be enforceable. The signed, written agreement requirement will greatly minimize the potential for litigation. In addition, a party seeking the protection of a privilege must timely invoke the privilege. A party that not only expressly waives the mediation-communication privilege, but also discloses privileged communications, cannot later complain that it has lost the benefit of the privilege it has breached. (pp. 28-30)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, HOENS, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE ALBIN's opinion. JUDGE CUFF (temporarily assigned) did not participate.**

WILLINGBORO MALL, LTD., a New
Jersey Limited Partnership,

    Plaintiff-Appellant,

        v.

240/242 FRANKLIN AVENUE,
L.L.C., a New York Limited
Liability Company; COLONIAL
COURT APARTMENTS, L.L.C., a
Delaware Limited Liability
Company; FESTIVAL MARKET AT
WILLINGBORO, L.L.C., a New
Jersey Limited Liability
Company; ROY LUDWICK; and
NAMIK MARKE,

    Defendants-Respondents.

        Argued February 27, 2013 – Decided August 15, 2013

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 421 N.J. Super. 445 (2011).

        Glenn A. Weiner argued the cause for
        appellant (Klehr Harrison Harvey Branzburg,
        attorneys; Mr. Weiner and Michael A.
        Iaconelli, of counsel and on the briefs).

        Joseph P. Grimes argued the cause for
        respondents (Grimes & Grimes attorneys).

    JUSTICE ALBIN delivered the opinion of the Court.

    One of the main purposes of mediation is the expeditious

resolution of disputes.  Mediation will not always be

successful, but it should not spawn more litigation.  In this case, the parties engaged in protracted litigation over whether they had reached an oral settlement agreement in mediation.  Instead of litigating the dispute that was sent to mediation, the mediation became the dispute.

Communications made during the course of a mediation are generally privileged and therefore inadmissible in another proceeding.  A signed written settlement agreement is one exception to the privilege.  Another exception is an express waiver of the mediation-communication privilege by the parties.

Here, defendant moved to enforce the oral settlement agreement and, in doing so, submitted certifications by its attorney and the mediator disclosing privileged communications.  Instead of seeking to bar the admission of privileged mediation communications, plaintiff, in opposing the motion, litigated the validity of the oral agreement.  In pursuing that course, plaintiff also disclosed mediation communications.  In particular, plaintiff expressly waived the privilege on the record when questioning the mediator at a deposition and at an evidentiary hearing.

The Chancery Division found that plaintiff had waived the privilege and upheld the parties' oral agreement at the mediation session.  The Appellate Division upheld the oral agreement.  We affirm the judgment of the Appellate Division.

2

To be clear, going forward, parties that intend to enforce a settlement reached at mediation must execute a signed written agreement. Had that simple step been taken, the collateral litigation in this case might have been avoided. In responding to the motion to enforce, plaintiff did not timely interpose the lack of a signed written agreement as a defense. Moreover, if plaintiff intended to defend based on the absence of a written agreement, it was obliged not to litigate the validity of the oral agreement by waiving the mediation-communication privilege. This case should also serve as a reminder that a party seeking to benefit from the mediation-communication privilege must timely assert it.

I.

A.

This case begins with a commercial dispute over the terms of the sale of the Willingboro Mall in Willingboro Township. In February 2005, Willingboro Mall, LTD. (Willingboro), the owner of the Willingboro Mall, sold the property to 240/242 Franklin Avenue, L.L.C. (Franklin). The specific terms of the contract for sale are not germane to this appeal. To secure part of Franklin's obligation, the parties executed a promissory note and mortgage on the property. Willingboro claimed that monies due on August 3, 2005, were not forthcoming and filed a

3

mortgage-foreclosure action on the mall property. Franklin denied that it had defaulted on its contractual obligations and sought dismissal of the complaint. The Honorable Ronald E. Bookbinder, J.S.C., directed the parties to participate in a non-binding mediation for potential resolution of the dispute.

B.

On November 6, 2007, a retired Superior Court judge conducted the mediation over the course of several hours in the offices of Franklin's attorney, Joseph P. Grimes, Esq.[1] Willingboro's manager, Scott Plapinger, and attorney, Michael Z. Zindler, Esq., appeared on behalf of the company. The mediator met privately with each side, conveying offers and counteroffers. At some point, Franklin offered $100,000 to Willingboro in exchange for settlement of all claims and for a discharge of the mortgage on the mall property. On behalf of Willingboro, Plapinger orally accepted the offer in the presence of the mediator, who reviewed with the parties the terms of the proposed settlement. Plapinger also affirmed that he gave his attorney authority to enter into the settlement. The terms of the settlement, however, were not reduced to writing before the conclusion of the mediation session.

---

[1] This statement of facts was primarily adduced at an evidentiary hearing on a motion to enforce an alleged oral settlement agreement between the parties.

4

Three days later, on November 9, Franklin forwarded to Judge Bookbinder and Willingboro a letter announcing that the case had been "successfully settled." The letter set forth the purported terms of the settlement in eight numbered paragraphs. On November 20, Franklin's attorney sent a separate letter to Willingboro stating that he held $100,000 in his attorney trust account to fund the settlement, that Franklin had executed a release, and that the monies would be disbursed when Willingboro filed a stipulation of dismissal in the foreclosure action and delivered a mortgage discharge on the mall property.

On November 30, 2007, Willingboro's attorney told Franklin's attorney that Willingboro rejected the settlement terms and refused to sign a release or to discharge the mortgage. In December, Franklin filed a motion to enforce the settlement agreement. In support of the motion, Franklin attached certifications from its attorney and the mediator that revealed communications made between the parties during the mediation. Among other things, the mediator averred in his certification that the parties voluntarily "entered into a binding settlement agreement with full knowledge of its terms, without any mistake or surprise and without any threat or coercion" and that the settlement terms were accurately memorialized in Franklin's letter to the court.

Willingboro did not give its consent to the filing of either certification.  However, Willingboro did not move to dismiss the motion, or strike the certifications, based on violations of the mediation-communication privilege.  Instead, in opposition to the motion to enforce, Willingboro requested an evidentiary hearing and the taking of discovery, and filed a certification from its manager, Scott Plapinger.

In his certification, Plapinger averred that he had reluctantly agreed to participate in a mediation that his attorney told him would be non-binding.  Plapinger also certified to the substance of the parties' discussions during the mediation.  He asserted that as a result of his attorney's relentless insistence he went into a room where the mediator summarized the settlement terms agreed upon by the parties.  Plapinger stated that the "purported terms of a final and binding settlement" had not been reduced to writing and that if it had, he would not have signed it.  According to Plapinger, after the mediation, his attorney told him that the agreement was "binding" and that he had to sign the settlement papers.  He refused to do so.

The trial court ordered the taking of discovery and scheduled a hearing to determine whether an enforceable agreement had been reached during mediation.

C.

6

The parties deposed five witnesses, including the mediator, Willingboro's manager, and Willingboro's attorney. Before deposing the mediator, the parties agreed that they were "waiv[ing] any issues of confidentiality with regard to the mediation process" and agreed that the testimony elicited could be used for purposes of the motion to enforce the settlement agreement only and not for purposes of the underlying foreclosure action. Despite the waiver, the mediator declined to testify regarding the mediation in the absence of an order from Judge Bookbinder.

After a recess, Judge Bookbinder entered the room where the deposition was being taken. Judge Bookbinder pointed out to the parties' attorneys that under Rule 1:40-4(d), "unless the participants in a mediation agree, no mediator may disclose any mediation communication to anyone who was not a participant in the mediation." Willingboro's attorney stated that the parties agreed to the disclosure. The parties then consented to the court order compelling the mediator to testify. The mediator was deposed and divulged mediation communications.

D.

After the close of discovery, the Honorable Michael J. Hogan, P.J.Ch., conducted a four-day evidentiary hearing. Franklin called the mediator as its first witness. The mediator gave detailed testimony concerning communications made between

7

the parties during the course of the mediation.  The mediator testified that at the conclusion of the mediation, after a settlement had been reached, he asked Plapinger whether he had authorized his attorney to accept the $100,000 settlement offer, and Plapinger answered, "yes."  Moreover, Plapinger -- who was standing next to his attorney -- acknowledged that the settlement ended the case.

On cross-examination by Willingboro's new attorney, Michael Iaconelli, Esq., the mediator balked at disclosing "confidential type information . . . conversations [he] had with Mr. Zindler and [Mr. Plapinger]."  Iaconelli responded, "it's our position that the parties have waived confidentiality on that issue." Franklin's attorney agreed that "Judge Bookbinder's order is broad enough to waive confidentiality with regard to the mediation."  Finally, to satisfy the mediator's concerns, Iaconelli requested that the court issue "a standing order" requiring answers to questions that "concern discussions between [the mediator] and Mr. Zindler and [Mr. Plapinger] . . . because we are waiving, as we've already done, based on the agreement of the parties and Judge Bookbinder's order, any confidentiality on that issue."  Willingboro's attorney then continued to question the mediator concerning communications made during the mediation.

On the second day of the hearing, Willingboro reversed course and moved for an order expunging "all confidential communications" disclosed, including those in the mediator's testimony and certification and Franklin's attorney's certification, and barring any further mediation-communication disclosures. Willingboro maintained that mediation communications are privileged under the New Jersey Uniform Mediation Act (Mediation Act or Act) and Rule 1:40-4. Willingboro argued that mediation communications could not be presented in support of the motion to enforce the settlement.

Judge Hogan -- after reviewing the record in detail -- ruled that Willingboro had waived the mediation-communication privilege, and the hearing proceeded with the cross-examination of the mediator.

Franklin next called as a witness Michael Zindler, Willingboro's attorney at the mediation. Zindler testified that, on behalf of Willingboro, manager Scott Plapinger agreed to a settlement at the mediation, and that the terms included a payment of $100,000 by Franklin in exchange for a release and a discharge of the mortgage by Willingboro. He also stated that Franklin's November 9, 2007, letter accurately memorialized the terms of the settlement agreement.

Willingboro called Plapinger to the stand. Plapinger testified that his attorney and the mediator pressured him into

9

agreeing to a settlement that he believed would be non-binding. He acknowledged that the mediator read the terms of the proposed settlement to him and that he "just . . . acquiesced and agreed to everything that was asked of [him]."  According to Plapinger, "I said whatever I needed to say to extricate myself from an incredible uncomfortable, high pressure situation."  Apparently not given to understatement, he also said, "I would have confessed to the Lindbergh kidnapping and the Kennedy assassination . . . .  I said yes to all of it."

Bruce Plapinger, Scott's cousin and a member of Willingboro's board of managers, testified to a telephone conversation he had with Scott during the mediation.  Bruce asserted that he did not believe -- based on his conversations with Scott -- that the mediation proceeding would lead to a binding result.[2]

II.

Judge Hogan held that "a binding settlement agreement was reached as a result of [the] court-directed mediation."  He credited the testimony of the mediator and Willingboro's former attorney, Michael Zindler, and discounted the testimony of Scott

---

[2] Also admitted into evidence was a videotaped deposition of Alan Braverman, a business acquaintance of the parties, who testified to an earlier attempt to settle the dispute.  The court found his testimony to be "essentially irrelevant."

Plapinger, who -- Judge Hogan believed -- was suffering from "buyer's remorse." Judge Hogan found that "[e]ven though the [settlement] terms were not reduced to a formal writing at the mediation session," an agreement had been reached, as confirmed by the mediator and Zindler. Judge Hogan noted that Zindler testified that Franklin's November 9 letter had accurately set forth the parties' agreement. Last, the court determined that the validity of the settlement agreement rested on Plapinger's verbal assent to the agreement in the presence of others, not on any unexpressed mental reservations he may have had. Thus, the court granted Franklin's motion to enforce the settlement as memorialized in its November 9 letter.

## III.

The Appellate Division affirmed the trial court's enforcement of the settlement agreement.[3] Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 421 N.J. Super. 445, 456 (App. Div. 2011). The appellate panel acknowledged that parties assigned to mediation may waive the privilege that protects from disclosure any communication made during the course of the mediation, citing N.J.S.A. 2A:23C-5 and Rule 1:40-4(d). Id. at 452. The panel found that Willingboro "waived the

[3] We do not address other issues raised before the trial court and Appellate Division, which are not germane to this appeal.

11

confidentiality normally afforded to" mediation sessions and therefore the trial court properly proceeded to "determine whether the parties had reached a settlement." Id. at 455. Additionally, the panel rejected Willingboro's argument that the mediation rule, R. 1:40-4(i), "require[d] contemporaneous reduction of the terms to writing and obtaining signatures on the document at the mediation." Id. at 453. Finally, the panel held that there was substantial credible evidence in the record to support the court's findings "that the parties had reached a settlement at the mediation, the terms of the agreement were as set forth in the November 9, 2007 letter prepared by defendants' attorney to Zindler and the court, and that Scott Plapinger's assent to the settlement was not the product of coercion." Id. at 455-56.

This Court granted Willingboro's petition for certification. Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 209 N.J. 97 (2012). Willingboro raises two issues in its petition: whether Rule 1:40-4(i) requires a settlement agreement reached at mediation to be reduced to writing and signed at the time of mediation, and whether Willingboro waived the mediation-communication privilege.

IV.

12

Willingboro urges this Court to hold that, under Rule 1:40-4(i), "a settlement reached at mediation [is not] enforceable" unless it is "reduced to writing at the time of the mediation and signed by the parties." Because the writing memorializing the terms of the settlement was forwarded by Franklin after the mediation and never signed or otherwise assented to by Willingboro, Willingboro argues that both the trial court and Appellate Division erred in enforcing the oral agreement. Moreover, Willingboro disputes the trial court's and Appellate Division's findings that it waived the mediation-communication privilege. Willingboro submits that it did not waive the mediation-communication privilege "by presenting evidence in opposition" to the motion to enforce the oral agreement. Willingboro takes the position that it could not have waived the mediation-communication privilege, which "already had been destroyed by [Franklin's] disclosures" to the court through the mediator's certification. Willingboro posits that its response to Franklin's breach of the mediation-communication privilege was defensive and should not be taken as a waiver of the privilege.

In contrast, Franklin maintains that nothing in Rule 1:40-4(i) requires that a written settlement agreement resulting from mediation "be created or tendered on the actual day of the mediation" or that it be signed by the parties. Franklin argues

13

that the Appellate Division correctly "determined that the three day gap between mediation and memorialization of the settlement was reasonable." Moreover, Franklin relies on the reasoning and holdings of the trial court and Appellate Division that Willingboro waived the mediation-communication privilege. It therefore requests that this Court uphold enforcement of the oral settlement agreement reached at mediation between the parties.

V.

In construing the meaning of a court rule or a statute, our review is de novo, and therefore we owe no deference to the trial court's or Appellate Division's legal conclusions. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012) (citations omitted); see also Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995) (citations omitted) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). On the other hand, we will defer to a trial court's factual findings, particularly those influenced by the court's opportunity to assess witness testimony firsthand, provided the findings are supported by "sufficient credible evidence in the record." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 397 (2009) (internal quotation marks and citation

14

omitted); see also Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citation omitted).

## VI.

### A.

Public policy favors the settlement of disputes. Settlement spares the parties the risk of an adverse outcome and the time and expense -- both monetary and emotional -- of protracted litigation. See State v. Williams, 184 N.J. 432, 441 (2005). Settlement also preserves precious and overstretched judicial resources. See Herrera v. Twp. of S. Orange Vill., 270 N.J. Super. 417, 424 (App. Div. 1993) ("There is a clear public policy in this state favoring settlement of litigation." (citation omitted)), certif. denied, 136 N.J. 28 (1994).

Our court system encourages mediation as an important means of settling disputes. See Williams, supra, 184 N.J. at 446 (citations omitted). Indeed, our court rules provide for Complementary Dispute Resolution Programs, which are intended to enhance the "quality and efficacy" of the judicial process. R. 1:40-1. In particular, Rule 1:40-4(a) authorizes, in certain cases, a Superior Court judge to "require the parties to attend a mediation session at any time following the filing of a complaint."

15

Mediation is governed by our court rules, R. 1:40 to 1:40-12, the Mediation Act, N.J.S.A. 2A:23C-1 to -13, and our rules of evidence, N.J.R.E. 519. The success of mediation as a means of encouraging parties to compromise and settle their disputes depends on confidentiality -- a point recognized in both our jurisprudence and our court rules. See Williams, supra, 184 N.J. at 446-47; R. 1:40-4(d).

Rule 1:40-4(d) provides: "Unless the participants in a mediation agree otherwise or to the extent disclosure is permitted by this rule, no party, mediator, or other participant in a mediation may disclose any mediation communication to anyone who was not a participant in the mediation." The rule recognizes that without assurances of confidentiality, "'disputants may be unwilling to reveal relevant information and may be hesitant to disclose potential accommodations that might appear to compromise the positions they have taken.'" Williams, supra, 184 N.J. at 447 (quoting Final Report of the Supreme Court Task Force on Dispute Resolution 23 (1990)). Confidentiality promotes candid and unrestrained discussion, a necessary component of any mediation intended to lead to settlement. Id. at 446-47 (citations omitted). To this end, our court and evidence rules and the Mediation Act confer a privilege on mediation communications, ensuring that

16

participants' words will not be used against them in a later proceeding.

B.

Rule 1:40-4(c) provides that a communication made during the course of mediation is privileged:

> A mediation communication is not subject to discovery or admissible in evidence in any subsequent proceeding except as provided by the New Jersey Uniform Mediation Act, N.J.S.A. 2A:23C-1 to -13. A party may, however, establish the substance of the mediation communication in any such proceeding by independent evidence.

Although our court rule does not define "mediation communication," the Mediation Act does. N.J.S.A. 2A:23C-2 broadly defines a "[m]ediation communication" as any "statement, whether verbal or nonverbal or in a record, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator."

The Mediation Act and our rules of evidence both, in identical language, confer a privilege on mediation communications. N.J.S.A. 2A:23C-4(a) and N.J.R.E. 519(a)(a) provide: "Except as otherwise provided . . . a mediation communication is privileged . . . and shall not be subject to discovery or admissible in evidence in a proceeding unless waived or precluded as provided by . . . [N.J.S.A. 2A:23C-5]."

17

(Emphasis added). <u>N.J.S.A.</u> 2A:23C-4(b) and <u>N.J.R.E.</u> 519(a)(b) specifically set forth the breadth of the privilege:

> b. In a proceeding, the following privileges shall apply:
>
>> (1) a mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication.
>>
>> (2) a mediator may refuse to disclose a mediation communication, and may prevent any other person from disclosing a mediation communication of the mediator.
>
> . . . .

Additional support for the broad scope of the privilege is found in the drafters' commentary to the model Uniform Mediation Act. The drafters explained that the mediation-communication privilege allows a participant "to refuse to disclose and <u>to prevent another from disclosing particular communications</u>." Nat'l Conference of Comm'rs on Unif. State Laws, <u>Uniform Mediation Act</u> § 4, comment 4 (2003) (emphasis added) [hereinafter <u>UMA Drafters' Comments</u>], <u>available at</u> http://www.uniformlaws.org/shared/docs/mediation/uma_final_03.pdf. The drafters understood that the ability to block another from disclosing mediation communications "is critical to the operation of the privilege" and that the "parties have the greatest blocking power." <u>Ibid.</u>

C.

18

The mediation-communication privilege is not absolute. Our court and evidence rules and the Mediation Act carve out limited exceptions to the privilege, two of which are pertinent to this case. The first is the signed-writing exception, which allows a settlement agreement reduced to writing and properly adopted by the parties to be admitted into evidence to prove the validity of the agreement.

Rule 1:40-4(i) specifies the manner in which settlement agreements are to be memorialized "[i]f the mediation results in the parties' total or partial agreement." It provides that the agreement "shall be reduced to writing and a copy thereof furnished to each party." Ibid. Rule 1:40-4(i) also provides that "[t]he agreement need not be filed with the court, but if formal proceedings have been stayed pending mediation, the mediator shall report to the court whether agreement has been reached." Although Rule 1:40-4(i) does not state specifically that a written agreement must be signed by the parties, a publication prepared by the Civil Practice Division makes clear that any settlement agreement should be reduced to writing and signed. Civil Practice Div., Mediator's Tool Box: A Case Management Guide for Presumptive Roster Mediators 11 (Nov. 2011), available at http://www.judiciary.state.nj.us/civil/mediators_toolbox.pdf ("Before the parties leave the mediation, the mediator should

19

insist that a short form settlement agreement (term sheet) be drafted by one of the attorneys and signed by the parties at the mediation table.").

Although our court rule may be silent about whether a signed agreement is necessary, the Mediation Act and our evidence rules are not.  N.J.S.A. 2A:23C-6(a)(1) and N.J.R.E. 519(c)(a)(1) both provide that "an agreement evidenced by a record signed by all parties to the agreement" is an exception to the mediation-communication privilege.  (Emphasis added). Because a signed agreement is not privileged, it therefore is admissible to prove and enforce a settlement.

Although neither the Mediation Act nor N.J.R.E. 519 specifies what constitutes an "agreement evidenced by a record" and "signed," the UMA Drafters' Comments give insight regarding the intended scope of those words.  The UMA Drafters' Comments report that those words apply not only to "written and executed agreements," but also to "those recorded by tape . . . and ascribed to by the parties on the tape."  UMA Drafters' Comments, supra, at § 6(a)(1), comment 2.  For example, "a participant's notes about an oral agreement would not be a signed agreement."  Ibid.  In contrast, a "signed agreement" would include "a handwritten agreement that the parties have signed, an e-mail exchange between the parties in which they

agree to particular provisions, and a tape recording in which they state what constitutes their agreement."  Ibid.

D.

The second exception to the mediation-communication privilege relevant to this case is waiver.  The privilege

> may be waived in a record or orally during a proceeding if it is expressly waived by all parties to the mediation and:
>
> > (1) in the case of the privilege of a mediator, it is expressly waived by the mediator;                           and
>
> > (2) in the case of the privilege of a nonparty participant, it is expressly waived by the nonparty participant.

> [N.J.S.A. 2A:23C-5(a); N.J.R.E. 519(b).]

"Waiver is the voluntary and intentional relinquishment of a known right."  Knorr v. Smeal, 178 N.J. 169, 177 (2003) (citation omitted).  A valid waiver requires not only that a party "have full knowledge of his legal rights," but also that the party "clearly, unequivocally, and decisively" surrender those rights.  Ibid.  Importantly, N.J.S.A. 2A:23C-5(a) and N.J.R.E. 519(b) mandate that the waiver be express.  The UMA Drafters' Comments explain that "[t]he rationale for requiring explicit waiver is to safeguard against the possibility of inadvertent waiver."  UMA Drafters' Comments, supra, at § 5(a)-(b), comment 1.  Moreover, waivers "conducted on the record" do not present the problem of proving "what was said."  Ibid.

21

VII.

A.

We now apply these principles of law to the facts before us. First, had the parties reduced to writing the terms of the agreement and affixed their signatures to the document at the conclusion of the mediation, Franklin would have been able to seek enforcement of the settlement with evidence that fell within an exception to the mediation-communication privilege. N.J.S.A. 2A:23C-6(a)(1); N.J.R.E. 519 (noting that "an agreement evidenced by a record signed by all parties to the agreement" is an exception to the mediation-communication privilege). But here, the signed-writing exception does not come into play because, early in the proceedings, Willingboro did not seek to bar enforcement of the settlement based on the lack of a signed written agreement. Moreover, if Willingboro intended to rely on the signed-writing doctrine, then it was obliged to stand by this rule and not litigate the oral agreement by waiving the mediation-communication privilege.

Second, we conclude that the certifications filed by Franklin's attorney and the mediator in support of Franklin's motion to enforce the oral agreement disclosed privileged mediation communications. The certifications refer to statements made during the mediation and therefore fall squarely

22

within the definition of a "mediation communication" contained in <u>N.J.S.A.</u> 2A:23C-2.

Moreover, the Mediation Act and our evidence rules generally prohibit a mediator from making an "oral or written communication" to a court other than to inform the court whether a settlement was reached. <u>N.J.S.A.</u> 2A:23C-7(a)-(b); <u>N.J.R.E.</u> 519(d). Here, the mediator went far beyond merely communicating to the court that the parties had reached a settlement. The mediator certified to the accuracy of Franklin's November 9 letter, which set forth in eight numbered paragraphs the terms of an oral agreement between the parties. Franklin's letter revealed mediation communications -- not only Willingboro's oral assent to the settlement, but also its specific agreement to individual terms. By validating the contents of Franklin's letter, the mediator breached the privilege.

The terms of the settlement rested on privileged communications between the parties and mediator. However, Willingboro did not consent in advance to the disclosure of mediation communications to the court.

In the absence of a signed settlement agreement or waiver, it is difficult to imagine any scenario in which a party would be able to prove a settlement was reached during the mediation without running afoul of the mediation-communication privilege. The United States Court of Appeals for the Third Circuit reached

23

a similar conclusion under its Local Appellate Rule (LAR) 33.5. Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 434-36 (3d Cir. 2005) (citing 3d Cir. L.A.R. 33.5 (1995)), cert. denied, 546 U.S. 1091, 126 S. Ct. 1040, 163 L. Ed. 2d 857 (2006).

In Beazer, the plaintiff attempted to enforce an alleged oral agreement made by the parties during an appellate mediation. Id. at 434. Like the mediation-communication privilege in N.J.S.A. 2A:23C-4 and N.J.R.E. 519(a), LAR 33.5(c) provides that no one participating in the mediation session "may disclose 'statements made or information developed during the mediation process.'" Beazer, supra, 412 F.3d at 434-35 (quoting 3d Cir. L.A.R. 33.5(c) (1995)). LAR 33.5(d) "further provides that 'if a settlement is reached, the agreement shall be reduced to writing and shall be binding upon all parties to the agreement.'" Id. at 435 (quoting 3d Cir. L.A.R. 33.5(d) (1995)). The Third Circuit concluded that allowing oral agreements reached at mediation to bind the parties "would seriously undermine the efficacy of the Appellate Mediation Program by compromising the confidentiality of settlement negotiations." Id. at 434. The policy reasons supporting this approach are the encouragement of uninhibited discussion and the avoidance of contested hearings to determine whether the parties reached a settlement. See id. at 435-36 (citation omitted). Ultimately, the plaintiff in Beazer could not "prove the

24

existence or terms of the disputed oral settlement without violating this provision's broadly stated [mediation-communication-disclosure] prohibitions." Id. at 435.

Third, without the use of communications made during the mediation, Franklin likely could not have proved the existence of a settlement. Despite Franklin's violation of the mediation-communication privilege in seeking to enforce the oral settlement agreement reached at mediation, Willingboro did not timely move to strike or suppress the disclosures of the mediation communications. Instead, Willingboro proceeded to litigate whether it had, in fact, entered into a binding, oral settlement agreement. In taking this tack, Willingboro followed Franklin's approach and disclosed mediation communications. Willingboro breached the mediation-communication privilege by appending to its opposition papers Scott Plapinger's certification, which revealed the substance of mediation communications. Additionally, Willingboro then engaged in the discovery process, deposing the mediator and participating in four other depositions that trenched on the mediation-communication privilege.

We reject Willingboro's assertion that its own disclosures of mediation communications were permitted by N.J.S.A. 2A:23C-5(b) and N.J.R.E. 519(b)(b). That statute and its corollary evidence rule provide: "A person who discloses . . . a

25

mediation communication that prejudices another person in a proceeding is precluded from asserting a privilege under [N.J.S.A. 2A:23C-4], but only to the extent necessary for the person prejudiced to respond to the representation or disclosure." This language suggests that the disclosure of some privileged communications does not necessarily open the door to disclosure of all privileged communications.

However, in this case, Willingboro expressly waived the mediation-communication privilege in responding to the motion to enforce the oral settlement agreement. In defending against Franklin's violation of the privilege, Willingboro did not have to make further disclosures of mediation communications. It merely had to invoke the protections of the Mediation Act and our evidence rules, which provide that "a mediation party may . . . prevent any other person from disclosing [] a mediation communication." N.J.S.A. 2A:23C-4(b)(1); N.J.R.E. 519(a)(b)(1). Instead, Willingboro engaged in unrestricted litigation over the validity of the oral agreement, which involved its own wholesale disclosures of mediation communications. Willingboro completely opened the door; it cannot now find shelter in N.J.S.A. 2A:23C-5(b) and N.J.R.E. 519.

B.

26

The mediation-communication privilege "may be waived in a record or orally during a proceeding if it is expressly waived by all parties to the mediation." N.J.S.A. 2A:23C-5(a); N.J.R.E. 519(b)(a). Although Franklin instituted the enforcement litigation and fired the first shot that breached the privilege, Willingboro returned fire, further shredding the privilege. At the mediator's deposition, Willingboro agreed to "waive any issues of confidentiality with regard to the mediation process." When the mediator declined to testify in the absence of a court order, Willingboro gave its unequivocal consent to having Judge Bookbinder direct the mediator to respond to questions that touched on communications made during the mediation.

When the mediator testified on the first day of the hearing concerning Franklin's motion to enforce the oral settlement agreement, Willingboro's attorney insisted that the mediator respond to questions that the mediator believed would elicit "confidential type information." Franklin's attorney told the court that "Judge Bookbinder's order is broad enough to waive confidentiality with regard to the mediation." Willingboro's attorney was evidently in total agreement on this issue. Indeed, Willingboro's attorney asked the court to order the mediator to answer questions about mediation discussions between the mediator and Willingboro's representatives, attorney Zindler

27

and company manager Plapinger. Willingboro's attorney also stated that his client had waived the issue of confidentiality.

Only after filing a certification in opposition to enforcement of the oral agreement, participating in five discovery depositions, and one day of an evidentiary hearing -- and after myriad breaches of the mediation-communication privilege -- did Willingboro attempt to invoke the privilege on the second hearing date. However, by then, Willingboro had passed the point of no return. Willingboro had expressly waived the privilege, N.J.S.A. 2A:23C-5(a) and N.J.R.E. 519(b)(a) -- it had "clearly, unequivocally, and decisively" surrendered its right to object to the admission of evidence regarding mediation communications at the evidentiary hearing. Knorr, supra, 178 N.J. at 177 (citing Country Chevrolet, Inc. v. Twp. of N. Brunswick Planning Bd., 190 N.J. Super. 376, 380 (App. Div. 1983)). Willingboro intentionally elected not to invoke the privilege in a timely manner.

VIII.

In summary, if the parties to mediation reach an agreement to resolve their dispute, the terms of that settlement must be reduced to writing and signed by the parties before the mediation comes to a close. In those cases in which the complexity of the settlement terms cannot be drafted by the time

28

the mediation session was expected to have ended, the mediation session should be continued for a brief but reasonable period of time to allow for the signing of the settlement.  We also see no reason why an audio- or video-recorded agreement would not meet the test of "an agreement evidenced by a record signed by all parties to the agreement" under N.J.S.A. 2A:23C-6(a)(1) and N.J.R.E. 519(c)(a)(1).  See UMA Drafters' Comments, supra, at § 6, comment 2.  To be clear, going forward, a settlement that is reached at mediation but not reduced to a signed written agreement will not be enforceable.

The mediation-communication privilege is intended to encourage candid and uninhibited settlement discussions.  The rule requiring a signed, written agreement is intended to ensure, to the extent humanly possible, that the parties have voluntarily and knowingly entered into the settlement and to protect the settlement against a later collateral attack.  A settlement in mediation should not be the prelude to a new round of litigation over whether the parties reached a settlement. The signed, written agreement requirement -- we expect -- will greatly minimize the potential for litigation.

Last, this case serves as a reminder that a party seeking the protection of a privilege must timely invoke the privilege. A party that not only expressly waives the mediation-communication privilege, but also discloses privileged

29

communications, cannot later complain that it has lost the benefit of the privilege it has breached.

IX.

For the reasons expressed, we affirm the judgment of the Appellate Division, which upheld the Chancery Division's confirmation of the oral settlement agreement in this case.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, HOENS, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUSTICE ALBIN's opinion.  JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-62                          SEPTEMBER TERM 2011

ON CERTIFICATION TO      Appellate Division, Superior Court


WILLINGBORO MALL, LTD., a New
Jersey Limited Partnership,

        Plaintiff-Appellant,

                v.

240/242 FRANKLIN AVENUE,
L.L.C., a New York Limited
Liability Company; COLONIAL
COURT APARTMENTS, L.L.C., a
Delaware Limited Liability
Company; FESTIVAL MARKET AT
WILLINGBORO, L.L.C., a New
Jersey Limited Liability
Company; ROY LUDWICK; and
NAMIK MARKE,

        Defendants-Respondents.



DECIDED          August 15, 2013
                 Chief Justice Rabner                    PRESIDING
OPINION BY       Justice Albin
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY


| CHECKLIST | AFFIRM | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE HOENS | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| TOTALS | 6 | |