**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3224-17T2

JEAN MATHURIN,

     Plaintiff-Respondent,

v.

LUCY MATHURIN,

     Defendant-Appellant.

_____

Submitted December 19, 2018 – Decided January 9, 2019

Before Judges Reisner and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0457-15.

George J. Cotz, attorney for appellant.

Theresa Richardson, attorney for respondent.

PER CURIAM

Defendant Lucy Mathurin appeals from a March 16, 2018 order denying her motion to enforce a settlement she and plaintiff Jean Mathurin allegedly reached in mediation. We affirm.

The dispute involved the parties' former marital residence. The parties were divorced in October 2015, following a twenty-nine year marriage. They entered into a Matrimonial Settlement Agreement (MSA), which in pertinent part provided as follows:

> A. The . . . residence will be listed for sale immediately. The parties will jointly establish an asking price and will jointly choose a realtor to market the home. They agree, however, that they will not sign an exclusive listing but will have the home listed immediately on the multiple listing boards. If the parties cannot agree upon an asking price, the realtor will set the price. If the parties cannot agree upon a realtor, each will suggest three realtors with the other party having the right to strike two of the other party's proposed realtors. The parties will then put the remaining names in a hat and pick a realtor from the remaining names.
>
> B. The parties will mutually agree upon a reasonable purchase offer, provided, however, that the offer is based upon prevailing market rates. Upon the sale of the marital home, the parties will share the [n]et [p]roceeds, as defined herein, with the [defendant] to receive [sixty-five percent] of same and the [plaintiff] to receive [thirty-five percent] of same and each will claim the same proportionate share of the basis of the home and be responsible for his/her own tax liability, if any, on the receipt of his/her share of the sale proceeds.

2

The residence was listed for sale and the parties received a purchase offer. Plaintiff was willing to accept the offer, however, defendant sought to buy him out for the same amount as the pending offer. Plaintiff declined and filed a motion to enforce the MSA.

In June 2016, a motion judge entered an order granting plaintiff's motion to compel the listing of the residence. Plaintiff filed two subsequent motions for enforcement. The first motion was denied without prejudice because it lacked a copy of the MSA as required by Rule 5:5-4(a). The second motion resulted in a February 2017 order, which denied the relief requested without prejudice and cited a provision in the MSA that required the parties to first negotiate between themselves to resolve any dispute arising from their agreement, and then seek mediation "before using the [c]ourts for any dispute resolution."

After direct negotiations failed, the parties attended mediation, which resulted in a memorandum of understanding (MOU) prepared and signed only by the mediator. According to defendant, the parties had reached a settlement following the first mediation session, which enabled her to retain the residence by means of a buyout subject to certain conditions. However, when plaintiff's counsel contacted plaintiff after the mediation to discuss the specific terms of

3

the settlement, plaintiff objected to credits allotted to defendant under the agreement for a hypothetical brokerage commission and closing costs. Plaintiff refused to sign a proposed agreement presented by his attorney, which memorialized the MOU and purported to modify the MSA provisions relating to the residence.

Plaintiff jettisoned his attorney, hired new counsel, and filed a fourth motion to enforce the MSA.[1] Defendant cross-moved for enforcement of the MOU. In support of her motion, defendant attached certifications from herself, her attorney, and, remarkably, plaintiff's attorney, all of which discussed the negotiations during the mediation.

A different judge considered the motions and entered the March 16, 2018 order granting plaintiff's motion and denying defendant's cross-motion. The judge noted it was improper for her to consider the MOU because the document was a product of a mediation and therefore privileged. The judge found the MOU was not a binding settlement agreement, but an attempt at mediation. This appeal followed.

---

[1] Plaintiff's motion also sought to enforce the June 2016 order, which had also enforced the MSA's requirement the residence be sold.

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "We do 'not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (alterations in original) (quoting Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974))). Therefore, "'[o]nly when the trial court's conclusions are so "clearly mistaken" or "wide of the mark" should we interfere[.]'" Gnall, 224 N.J. at 428 (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007))). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Relying on our Supreme Court's decision in GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 183 (2017), defendant urges us to apply a de novo standard of review because she claims the MOU was a contract. She asserts the motion judge ignored the plain language of the MOU, which stated: "This letter

[MOU] reflects the [s]ettlement [a]greement between the parties. The parties agree that it represents an enforceable settlement agreement by and between the parties."

Defendant argues the MOU contained no language indicating plaintiff was granted more time to contemplate whether to accept its terms. She asserts "in the mind of [the mediator] it was clearly a fait accompli." Defendant argues the motion judge should not have relied upon plaintiff's representations that there was no agreement because plaintiff lacked credibility. According to defendant, "[n]ot only did [p]laintiff make no reference whatsoever to the . . . mediation in his initial motion; but [defendant's] counsel's reply [c]ertification pointed out several instances where his supporting [c]ertification was demonstrably untrue."

The motion judge did not err by refusing to enforce the MOU. Willoughby is inapposite, because there the parties' attorneys had signed the settlement agreement. Willoughby, 230 N.J. at 177. This was consistent with the Supreme Court's holding in Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC, 215 N.J. 242, 245 (2013), where the Court unequivocally stated "[t]o be clear, . . . parties that intend to enforce a settlement reached at mediation must execute a signed written agreement."

Similar to the parties' actions here, the parties in <u>Willingboro</u> had attended mediation and Franklin sought to enforce an oral agreement it believed had been reached in mediation. <u>Ibid.</u> Franklin submitted certifications by its attorney and the mediator disclosing privileged mediation discussions in order to prove a settlement had been reached. <u>Ibid.</u> Plaintiff also litigated the validity of the alleged settlement by disclosing settlement communications. <u>Ibid.</u>

The Supreme Court held that absent a waiver of the mediation privilege, the parties could not rely upon the mediation discussions to prove a settlement existed. <u>Id.</u> at 259. The Court noted:

> First, had the parties reduced to writing the terms of the agreement and affixed their signatures to the document at the conclusion of the mediation, Franklin would have been able to seek enforcement of the settlement with evidence that fell within an exception to the mediation-communication privilege. N.J.S.A. 2A:23C-6(a)(1); N.J.R.E. 519 (noting that "an agreement evidenced by a record signed by all parties to the agreement" is an exception to the mediation-communication privilege). . . .
>
> Second, we conclude that the certifications filed by Franklin's attorney and the mediator in support of Franklin's motion to enforce the oral agreement disclosed privileged mediation communications. The certifications refer to statements made during the mediation and therefore fall squarely within the definition of a "mediation communication" contained in N.J.S.A. 2A:23C-2.

. . . .

The terms of the settlement rested on privileged communications between the parties and mediator. However, Willingboro did not consent in advance to the disclosure of mediation communications to the court.

In the absence of a signed settlement agreement or waiver, it is difficult to imagine any scenario in which a party would be able to prove a settlement was reached during the mediation without running afoul of the mediation-communication privilege. . . .

. . . .

Third, without the use of communications made during the mediation, Franklin likely could not have proved the existence of a settlement.

[Id. at 258-60.]

The Court concluded as follows:

In summary, if the parties to mediation reach an agreement to resolve their dispute, the terms of that settlement must be reduced to writing and signed by the parties before the mediation comes to a close. In those cases in which the complexity of the settlement terms cannot be drafted by the time the mediation session was expected to have ended, the mediation session should be continued for a brief but reasonable period of time to allow for the signing of the settlement. We also see no reason why an audio- or video-recorded agreement would not meet the test of "an agreement evidenced by a record signed by all parties to the agreement" under N.J.S.A. 2A:23C-6(a)(1) and N.J.R.E. 519(c)(a)(1).

[Id. at 262-63.]

8

The same principles apply here. Since neither the parties nor their attorneys had signed an agreement, the only means to establish the existence of a settlement was through disclosing the MOU itself, which was a privileged communication from the mediator, or by certifying to the mediation discussions. Both methods would violate the mediation privilege absent an advance waiver. For these reasons, the motion judge was correct to decline enforcement of the MOU as a binding contract between the parties.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3224-17T2