**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0960-23

MARIO NAPOLITANO and
TONI-LYNN NAPOLITANO,

      Plaintiffs-Appellants,

v.

EUROPEAN CONSTRUCTION
PROFESSIONALS, LLC, and
CARLOS LOPES,

      Defendants-Respondents,

and

ALEN FELD and THE CITY OF
BAYONNE, and its Component
Departments, Offices, and Agencies,[1]

      Defendants.

_____

Submitted April 9, 2024 – Decided April 17, 2024

Before Judges Mayer and Enright.

---

[1] Defendants Alen Feld and the City of Bayonne are not parties on the interlocutory appeal.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1180-18.

Skolnick Legal Group, PC, attorneys for appellants (Thomas Blair Gardner and Martin Phillip Skolnick, of counsel and on the briefs).

Burns Horn, LLC, attorneys for respondents (Robert F. Horn, on the brief).

PER CURIAM

By leave granted, plaintiffs Mario and Toni-Lynn Napolitano[2] appeal from a September 14, 2023 order granting a motion to enforce a settlement filed on behalf of defendants European Construction Professionals, LLC (European) and Carlos Lopes. Plaintiffs also appeal from an October 20, 2023 order denying their motion for reconsideration. We reverse and remand.

Plaintiffs own property in Bayonne. On February 20, 2014, plaintiffs entered into a written contract with European to build a home on their vacant property. Lopes was European's representative and dealt with plaintiffs regarding the construction of the new home. European started construction in

---

[2] Toni-Lynn Napolitano is deceased. As did the trial court and counsel, we refer to the parties filing the appeal as plaintiffs.

A-0960-23

June 2014, and demanded payment from plaintiffs to proceed with the construction.

In July 2014, plaintiffs noticed construction on their new home slowed. They also observed significant time periods with no work done. Despite the slowed progress of the construction, European and Lopes demanded payment from plaintiffs. By the fall of 2014, plaintiffs realized their new home would not be constructed by the completion date stated in the written contract.

In 2015, the construction project failed several municipal inspections, including electrical, mechanical, and plumbing. During this time period, European and Lopes continued to demand payment from plaintiffs. Plaintiffs made the demanded payments, anticipating completion of their new home in the near future.

When plaintiffs realized their home would not be timely completed, they retained counsel to address various construction defects and delays. The home continued to fail municipal inspections. In April 2015, the City of Bayonne issued a notice of violation and order to terminate construction on the home. The notice directed European to abate all violations and deficiencies by May 1, 2015. While European corrected certain deficiencies, other defects and deficiencies remained unresolved.

A-0960-23

Because European and Lopes failed to correct the defects and deficiencies, plaintiffs filed a complaint against European, Lopes, and other defendants. In their multi-count complaint, plaintiffs alleged breach of contract, breach of warranty, fraudulent misrepresentation, unjust enrichment, negligence, and various statutory violations. European and Lopes filed an answer.

The parties exchanged discovery and eventually agreed to participate in mediation. The parties attended mediation on November 11, 2022, but failed to reach an agreement on that date. There were no other in-person mediation sessions after November 11, 2022. On December 8, 2022, the mediator sent the following letter to counsel for the parties:

> Based upon my phone conversations with each of you yesterday, we have reached an agreement.
>
> European and [Lopes] . . . [are] agreeable to paying Mr. Napolitano in full and final settlement of all claims arising out of the project [in] the amount of $840,000.
>
> The above amount will be paid as follows:
>
> 1. $159,500 [u]pon Napolitano's filing of a [s]tipulation of [d]ismissal with [p]rejudice and [w]ithout [c]osts[;] [and]
>
> 2. $680,500 [f]or the purchase of Mr. Napolitano's home[,] . . . memorialized in a standard form of [r]eal [e]state [c]ontract.

4

3. The [r]eal [e]state [c]ontract will provide for a [ten percent] deposit ($68,000) to be held in trust until settlement or closing of title.

4. Said [r]eal [e]state [c]ontract shall provide that Napolitano will take back a $300,000 mortgage, at [six percent] interest. Monthly payments will be made based upon a [thirty]-year amortization schedule, but the entire unpaid principal and any accrued and unpaid interest will be payable in full five years after the date of mortgage execution.

5. . . . .Mr. Napolitano will . . . convey clear title to the property, the property must be free of all tenants[,] and the property must be in the condition it is [as of December 8, 2022], ordinary wear and tear excepted.

. . . .

I believe the above sets forth the basic parameters of the settlement. Unless you want me involved, I will leave it to you . . . to prepare the [s]ettlement [a]greement and associated [r]eal [e]state [c]ontract.

Kindly signify your respective . . . agreement that the above is an accurate summary of the settlement reached by either signing and returning this letter to me or giving the acknowledgment via return e-mail.

In what is a fine example of "never give up hope," I thank you both for your professional courtesies. It was a pleasure working with you.

My final invoice will follow in a day or two.

5

A-0960-23

Contrary to the provisions in the mediator's December 8 letter, neither party returned a signed copy of the letter. Nor did the parties email the mediator acknowledging a settlement.

On December 13, 2022, plaintiffs' counsel emailed the mediator, stating, "[Mr. Napolitano] is just confirming a few things on his end. I will get back to you shortly." Later that same day, the mediator replied, "[Defendants' counsel] is doing likewise. [European] is going to need a larger mortgage than the amount proposed in my letter. Since it balloons at [five] years, this should not be a serious issue. Please let me know."

A month later, plaintiffs' counsel emailed defendants' attorney, stating "I thought we were finalizing the settlement but then you stopped responding. What happened?" Later that day, defendants' counsel replied he underwent surgery and "need[ed] to finalize the release." Despite this email exchange between counsel, the parties never executed a formal written settlement agreement or real estate contract consistent with the mediator's December 8, 2022 letter. Nor was any release circulated.

In August 2023, defendants filed a motion to enforce a settlement. During the September 14, 2023 motion argument, defense counsel explained the parties were "struggling . . . to get the [settlement] details finalized[.]" On the other

A-0960-23

hand, plaintiffs' counsel argued, "[T]here [was] no settlement. There [was] . . . an outline of terms that need to be resolved . . . . [T]here [was] no real estate contract. . . . There [was] no mortgage . . . ."

In a September 14, 2023 order, the judge granted defendants' motion to enforce the settlement. In her written decision, the judge found:

> [I]t is evident that [defendants have] met [their] burden and shown that there was a "meeting of the minds" as a result of the mediation . . . , which was memorialized in the letter of December 8, 2022. Therein, [the mediator] confirm[ed] that the parties ha[d] agreed to settle for $840,000 and set[] forth . . . the "parameters" of the agreement. Said terms are plain and unambiguous and constitute the material terms of the agreement. The unfortunate fact that the parties have not been able to "flesh out" the release terms does not merit the undoing of this settlement, especially as there is no showing of any fraud or other compelling circumstances in this motion record.

Plaintiffs moved for reconsideration of the September 14, 2023 order. The judge denied reconsideration in an October 20, 2023 order. In denying reconsideration, the judge found:

> Plaintiff[s] ha[ve] failed to set forth a justifiable reason for this [c]ourt to reconsider the September 14 [o]rder. In [that] [o]rder, the [c]ourt held that, although the settlement agreement was not signed by both parties, a "meeting of the minds" occurred and [was] memorialized in the . . . letter dated December 8, 2022. Upon reconsideration, [p]laintiff[s] argue[] that the [December 8, 2022] letter was not signed, confirmed,

7

or acknowledged by either party per the [mediator's] request . . . . The [c]ourt does not find this argument persuasive. In Pascarella v. Bruck, the Appellate Division held that an agreement to settle a lawsuit, where voluntarily entered, is binding upon the parties even in the absence of a writing. 190 N.J. Super. 118, 124 (App. Div. 1983); Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993). . . . Here, [p]laintiff[s'] argument fails because precedent does not require that the settlement be in writing and signed for a "meeting of the minds" to occur.

Plaintiffs moved for leave to appeal the September 14, 2023 and October 20, 2023 orders. In a November 30, 2023 order, we granted leave to appeal from those orders.

On appeal, plaintiffs argue the judge "erred in concluding that an unsigned proposal sent to the parties by a mediator after a failed mediation could bind the parties as an enforceable settlement agreement." We agree that the judge mistakenly found the unsigned proposal submitted by the mediator to be a valid and enforceable settlement.

Our "review of a motion to enforce settlement is de novo" and we "consider[] whether the 'available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge . . . to resolve the disputed factual issues in favor of the non-moving party.'" Gold Tree Spa, Inc. v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023)

8

(omission in original) (quoting Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997)). The party seeking to enforce the settlement has the burden of proving a valid settlement was reached. Amatuzzo, 305 N.J. Super. at 475.

Ordinarily, "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact that the writing does not materialize because a party later reneges." Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995) (alteration in original) (quoting Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993)). However, "a settlement that is reached at mediation but not reduced to a signed written agreement will not be enforceable." Gold Tree Spa, 475 N.J. Super. at 245 (quoting Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 263 (2013)). This "broad, bright-line rule" governs all mediation agreements, "whether mediation is court-ordered or voluntary." Ibid. The decisions in Willingboro and Gold Tree Spa are clear and unequivocal in holding a settlement by way of a mediation is achieved only when the parties agree in writing.

Although the parties dispute whether there were further telephonic discussions with the mediator after November 11, 2022, there is no dispute the

A-0960-23

parties never signed the December 8, 2022 letter or submitted an email acknowledging and accepting the terms contained in that letter. Therefore, consistent with well-settled case law, the document could not, and did not, constitute an enforceable settlement.

Defendants' merits brief asserts plaintiffs lack standing on appeal because they failed to disclose the death of one of the named parties. However, defendants did not seek leave to file a cross-appeal. Moreover, defendants failed to present this issue to the trial court. Thus, we decline to address defendants' standing argument.

To the extent we have not addressed any remaining arguments, those arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0960-23